IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JANICE MONCRIEF, as Administratrix of the Estate of Gary Moncrief, deceased, and in her individual capacity, BENITA MONCRIEF, and TAMARA ACREE, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) ) | CASE NO. 2:23-cv-331-JTA (WO) |
| CITY OF MONTGOMERY, a municipal corporation of the State of Alabama, ERNEST N. FINLEY, JR., in his individual capacity as former Police Chief of the City of Montgomery Police Department, CHRISTOPHER BROWN, and JAMES ALBRECHT, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss Amended Complaint. (Doc. No. 34.) For the reasons stated below, the motion will be granted in part and denied in part.

### I.      JURISDICTION AND VENUE

The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Docs. No. 22, 23.)  This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over their state law claims pursuant to 28 U.S.C. § 1367. The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both. *See* 28 U.S.C. § 1391.

## II.    STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court takes the facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012). To avoid dismissal, the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted). While Federal Rule of Civil Procedure 8(a) "does not require 'detailed factual allegations'... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A complaint is insufficient if it "offers labels and conclusions or a formulaic recitation of the elements of a cause of action," or if it "tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotations omitted) (quoting *Twombly*, 550 U.S. at 555, 557). In short, a complaint must provide a "'plain statement possess[ing]' enough heft to 'show that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 557 (internal quotations omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

### III.   PROCEDURAL HISTORY

This case arises out of an incident on May 18, 2021, in which Defendants James Albrecht and Christopher Brown, police officers for the City of Montgomery, used deadly force by firing into a vehicle that was occupied by four people. In the incident, one of the occupants, Gary Moncrief, died due to a gunshot wound. On May 17, 2023, Plaintiff Janice Moncrief, Gary Moncrief's mother and next of kin who sues in both her representative and individual capacities, along with Plaintiffs Benita Moncrief and Tamara Acree, filed this suit against the two officers,[1] the City of Montgomery ("the City"), and Ernest N. Finley, in his individual capacity as a former police chief of the City of Montgomery Police Department. (Doc. No. 1.)

On November 28, 2023, Plaintiffs filed an amended complaint.[2] (Doc. No. 29.) Plaintiffs assert the following claims in the amended complaint:

- Count I: a claim pursuant to 42 U.S.C. § 1983 against Officers Brown and Albrecht for unlawful use of excessive force;

- Count II: a claim pursuant to 42 U.S.C. § 1983 against the City and Finley for unlawful use of excessive force;

---

[1] Plaintiffs originally filed suit against the two officers under fictitious names. (Doc. No. 1.) Prior to the filing of the amended complaint, the Court allowed a period of limited discovery for Plaintiffs to discover the names of the two officers. (Docs. No. 28, 29.) *Moncrief v. City of Montgomery*, No. 2:23-CV-331-JTA, 2023 WL 5444654 (M.D. Ala. Aug. 23, 2023).

[2] Defendants consented in writing to the filing of the amended complaint. (Doc. No. 29-4.)

- Count III: a claim pursuant to 42 U.S.C. § 1983 against the City for failure to properly train and supervise;

- Count IV: a claim pursuant to 42 U.S.C. § 1983 against Finley for failure to properly train and supervise;

- Count V: a state law claim against the City for wrongful death; and

- Count VI: a state law claim against Officers Brown and Albrecht for negligence.

On November 14, 2023, Defendants filed a motion to dismiss.[3] (Doc. No. 34.) Plaintiffs filed a brief in response to the motion to dismiss, and Defendants filed a reply. (Docs. No. 37, 40.) The motion to dismiss is ripe for disposition.

## IV.   FACTS[4]

In the summer of 2020, "[i]n the wake of nationwide and local police brutality protests," Montgomery's Mayor, Stephen Reed, vowed to implement eight recommendations (the "8 Can't Wait" policies) designed to curb unnecessary injuries and deaths at the hands of police, including "banning choke and strangleholds, requiring de-escalation, requiring a warning before shooting, exhausting all alternatives before using deadly force, implementing a duty for officers to intervene when unnecessary force is used, banning shooting at moving vehicles, requiring a use of force continuum, and requiring an

---

[3] Additionally, on November 30, 2023, Officers Christopher Brown and James Albrecht filed answers to the amended complaint. (Docs. No. 38, 39.)

[4] The facts set forth herein are taken from Plaintiffs' amended complaint and supporting exhibits attached thereto (Doc. No. 29), and are construed in the light most favorable to Plaintiffs. *See Resnick*, 693 F.3d at 1321–22, 1324–25 (discussing the standard of review in an appeal from an order granting a motion to dismiss for failure to state a claim upon which relief can be granted).

officer to report each time they use or threaten deadly force." (Doc. No. 29 at 4-5 ¶ 15.) Mayor Reed was quoted saying, "[t]hese were some things [my staff] thought we should look into, and I agreed with it, and then I spoke with [Finley] and [MPD] were already probably doing 75 to 80% of [the recommendations] . . . [s]o they were all for it. We wanted to send a message by signing on to that." (*Id*. at 5 ¶ 16.) According to the same reporting, Finley "said during a virtual town hall meeting with [Mayor Steven Reed] that the department currently follows seven of the eight recommendations…. [T]he only recommendation not in place at the department was the duty to intervene, a point they'd be sure to correct." (*Id*. at 5 ¶ 17.)

At approximately 8:15 p.m. on May 18, 2021, Plaintiffs went to the Microtel Hotel in a vehicle driven by Benita Moncrief to pick up Gary Moncrief.[5] (*Id.* at 6 ¶¶ 20-21.) Tamara Acree was in the front passenger seat and Janice Moncrief was in the back seat. (*Id*.) After circling the parking lot once, Benita Moncrief parked in the second parking space on the right side of the lobby entrance. (*Id*. at 6 ¶ 22.)  At that time, Officers Brown and Albrecht were parked where they could see the front door of the hotel and the sole entrance/exit to the parking lot. (*Id*. at 6 ¶ 23.) Officer Brown was in the driver seat of the police vehicle and Officer Albrecht was in the front passenger seat. (*Id*.)

Approximately one minute later, at 8:16 p.m., Gary Moncrief exited the hotel and entered Plaintiffs' car, sitting in the back seat on the driver's side as the police vehicle approached. (*Id*. at 6 ¶¶ 24-26.) Officer Brown parked the police vehicle immediately

---

[5] Plaintiffs indicate that Gary Moncrief was suspected of kidnapping. (Doc. No. 29 at 4 n.1.)

behind Plaintiffs' vehicle, blocking Plaintiffs' vehicle so that it could not move. (*Id*. at 6 ¶ 26.)

Seconds later, Officer Albrecht exited the police vehicle holding a rifle. (*Id*. at 6-7 ¶¶ 27-28.) Officer Brown opened his door, and Benita Moncrief opened her door and exited the car with her hands up. (*Id*.) Without provocation,[6] Officer Albrecht fired twice while backing up, then began firing into the passenger side of Plaintiffs' vehicle. (*Id*. at 7 ¶ 28; Doc. No. 29-1 at 1-4.) One of the bullets struck Gary Moncrief in the head, causing his death. (*Id*. at 4 ¶ 13; Doc. No. 29-1 at 4.) One second after Officer Albrecht opened fire, Gary Moncrief slumped to his right, toward his mother, as Benita Moncrief ran toward the hotel lobby. (Doc. No. 29 at 7 ¶ 29.) Janice Moncrief and Tamara Acree narrowly avoided being struck by bullets. (*Id*.) Officer Albrecht then ran behind the police vehicle on the driver's side. (*Id*. at 7 ¶ 30.) Soon thereafter, the officers removed Janice Moncrief and Tamara Acree from Plaintiffs' vehicle, handcuffed them, and separated them. (*Id*. at 7 ¶ 31.)

Surveillance camera footage of the incident contains no evidence that Plaintiffs actively resisted or threatened the officers before the shooting or that the officers faced any

---

[6] Defendants dispute the allegation that Gary Moncrief died of a gunshot wound inflicted without provocation by one of the officers. They argue instead that he shot himself and the officers fired in response to hearing Gary Moncrief's gun discharge. However, as Defendants recognize, in considering a motion to dismiss, "the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to" Plaintiffs. (Doc. No. 34 at 3 (Defendants' motion to dismiss (citing *Hill v. White*, 321 F.3d 1334 (11th Cir. 2003)).) Assuming they are true, the allegations in the complaint, construed in the light most favorable to Plaintiffs, are sufficient to support the conclusion that Gary Moncrief's death was caused by a bullet fired without provocation by Officer Albrecht, who was acting in concert with Officer Brown. (Doc. No. 29 at 4 ¶ 13; Doc. No. 29 at 7 ¶ 29; Doc. No. 29-1 at 4.)

articulable threat before they began firing. (Doc. No. 29 at 7-8 ¶¶ 32-34.) Nevertheless, Plaintiffs allege, Officers Brown and Albrecht opened fire without provocation pursuant to an unspecified custom and policy of the Montgomery Police Department, which was known and ratified by Finley.[7] (*Id*. at 8 ¶ 35; Doc. No. 29-1 at 1-4.)

After the shooting, Finley, who was then chief of Montgomery police, stated to local reporters that Officers Brown and Albrecht and Gary Moncrief "exchanged gunfire after the police confronted the suspect." (Doc. No. 29 at 4 ¶ 14.)

"On May 26, 2021, eight days after the officer-involved shooting, Montgomery County District Attorney Daryl Bailey and Montgomery City Mayor Steven Reed held an almost 45-minute press conference purporting to update the community on the investigation into the shooting." (*Id*. at 5 ¶ 18.) At the press conference, the Montgomery County District Attorney "purported to describe the events of the officer-involved shooting; however, the source of [his] information is unclear." (*Id*. at 5 ¶ 19.) Finley and the state investigating agency, the State Bureau of Investigation, did not participate in the press conference. (*Id.* at 5 ¶ 18.)

## V.    DISCUSSION

A.    Count I

---

[7] In addition, in response to the motion to dismiss, Plaintiffs argue that Officers Albrecht and Brown *violated* the City's policing policies that required "de[-]escalation, a warning before shooting, exhausting all alternatives before using deadly force, banning shooting at moving vehicles, requiring a use of force continuum, and requiring an officer to report each time they use or threaten deadly force." (Doc. No. 37 at 5.)

Officers Brown and Albrecht argue that Plaintiffs' § 1983 claim against them for unlawful use of excessive force is due to be dismissed due to immunity afforded by Alabama state law pursuant to Ala. Code 1975 § 6-5-338, as well as *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000) and its progeny.[8] (Doc. No. 34 at 4-5.) However, Officers Brown and Albrecht do not explain[9] how *state*-granted immunity applies to Plaintiffs' § 1983 claim of excessive force against them, a claim that arises under *federal* constitutional and statutory law. *Cf. Martinez v. Hudson*, No. 2:17-CV-00256-RDP, 2017

---

[8] In their motion to dismiss, Officers Brown and Albrecht do not assert that Count I is due to be dismissed on grounds of federal qualified immunity principles. Qualified immunity is not identical to (but shares some similarities with) Alabama state agent immunity under *Cranman* and Alabama state statutory discretionary function immunity. *See Martinez v. Hudson*, No. 2:17-CV-00256-RDP, 2017 WL 2687472, at *6 (N.D. Ala. June 22, 2017) (noting some differences); *see also Hunter v. Leeds*, 941 F.3d 1265 (11th Cir. 2019) (analyzing whether qualified immunity applied to § 1983 claims, analyzing whether state law discretionary function/state agent immunity applied to state law claims, and noting the similarities between the two different types of immunity); *Brown v. City of Huntsville, Ala.*, 608 F.3d 724 (11th Cir. 2010) (applying federal qualified immunity principles to § 1983 excessive force claims and applying Alabama's statutory and *Cranman* immunity principles to state-law claims). *Cf. Jeancharles v. Augustus*, No. 13-60723-CIV, 2014 WL 4824371, at *3 (S.D. Fla. Sept. 26, 2014) ("Qualified immunity is a federal concept that applies only to federal claims brought under [§] 1983.").

[9] In their brief in support of the motion to dismiss, Defendants include a remark that "[i]t is important to note that state agent immunity isn't limited to a claim of negligence." (Doc. No. 34 at 5 (sic).) However, Defendants do not affirmatively assert that state law immunity applies to § 1983 claims, explain the mechanics of applying state law immunity to Plaintiffs' § 1983 claims, or even cite authority to the effect that state law immunity is a bar to § 1983 claims. In support of their comment that "state agent immunity is" not "limited to claims of negligence," Defendants cite a passage from *Ex Parte City of Montgomery*, 272 So. 3d 155, 168 (Ala. 2018), which is a block quote from *Ex parte Randall*, 971 So. 2d 652, 664 (Ala. 2007). That block quote, as used in both *Ex parte City of Montgomery* and *Randall*, related to the applicability of state law immunity to *state law claims* other than negligence claims. *Ex parte City of Montgomery*, 272 So. 3d at 158, 168 (noting that the plaintiff's claims were premised on negligence, wantonness, and respondeat superior); *Randall*, 971 So. 2d at 661 (outlining the claims and defenses, clearly indicating that the defendant "assert[ed] State-agent immunity as a defense" to the plaintiffs' state law claims for fraud and negligent and wanton infliction of wrongful death).

WL 2687472, at *6 (N.D. Ala. June 22, 2017) ("Defendants have not cited (and the Court has not found) any authority to support the proposition that Alabama statutory discretionary-function immunity applies to federal § 1983 claims."). District courts faced with this issue have concluded that "[s]tate-law immunity defenses have no bearing on liability under § 1983. Rather, federal law controls whether an individual is immune from § 1983 liability." *Williams v. City of Abbeville*, No. 1:12-CV-263-WKW, 2013 WL 1117297, at *6 (M.D. Ala. Mar. 18, 2013) (rejecting an argument that state-agent immunity under Alabama law entitled the defendant police officer to immunity from a § 1983 malicious prosecution claim); *see also Martinez*, 2017 WL 2687472, at *6 (explaining that, pursuant to *Estate of Gilliam ex rel. Waldroup v. City of Prattville*, 639 F.3d 1041, 1045 (11th Cir. 2011) and § 1988(a), the court likely would conclude that "Alabama's discretionary-function immunity is inapplicable to a § 1983 claim"); *J.P.M. v. Palm Beach Cnty. Sch. Bd.*, No. 10-80473-CIV, 2011 WL 13281800, at *3 (S.D. Fla. Mar. 29, 2011) (rejecting the application of Florida statutory state agent immunity on grounds that "state-law immunities are irrelevant in § 1983 cases"). *Cf. Howlett By & Through Howlett v. Rose*, 496 U.S. 356, 375 (1990) ("If the [Florida] District Court of Appeal meant to hold that governmental entities subject to § 1983 liability enjoy an immunity over and above those already provided in § 1983, that holding directly violates federal law. The elements of, and the defenses to, a federal cause of action are defined by federal law."); *Cranman*, 792 So. 2d 392, 405 ("[A] State agent shall not be immune from civil liability in his or her personal capacity … when the Constitution or laws of the United States … require otherwise.").

Because it does not appear that Alabama state statutory and *Cranman* immunity principles apply to § 1983 claims, and because Officers Brown and Albrecht have not indicated why this Court should conclude otherwise, the Court concludes that state agent immunity does not shield Officers Brown and Albrecht from liability in a § 1983 excessive force claim brought pursuant to federal law. Consequently, the motion to dismiss is due to be denied in relation to Count I.

B.     Count II and Count IV

Finley argues that Counts II and IV are due to be dismissed against him[10] on grounds of qualified immunity. (Doc. No. 34 at 6-8.) "Qualified immunity 'shields officials from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."'" *Odom v. Boisvert*, No. 23-11226, 2024 WL 3649048, at *2 (11th Cir. Aug. 5, 2024) (unreported) (quoting *Crocker v. Beatty*, 995 F.3d 1232, 1239 (11th Cir. 2021) (quoting in turn *Mullenix v. Luna*, 577 U.S. 7, 11 (2015))). The Court employs a burden-shifting analysis to the issue of qualified immunity. A defendant seeking dismissal on grounds of qualified immunity "first must prove that he was 'acting within his discretionary authority.'" *Id.* (quoting *Piazza v. Jefferson County*, 923 F.3d 947, 951 (11th Cir. 2019) (quoting in turn *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007))). If the defendant satisfies this initial burden, then "the burden shifts to the plaintiff to prove that '(1) the officer violated a

---

[10] Defendants do not argue that Count II is due to be dismissed to the extent that it is asserted against the City.

constitutional right and (2) the right was clearly established at the time of the alleged violation.'" *Id*. (quoting *Piazza*, 923 F.3d at 951).

Finley points out that, to the extent Plaintiffs may have any § 1983 claim against him under Count II, that claim rests on their allegations that he is liable to them for

> (1) … creat[ing],  maintain[ing], or implement[ing] a policy or custom under which individuals being detained or arrested would be subject to the use of excessive and unreasonable force and (2) … [being] deliberately indifferent in supervising and training Defendant [Brown] and Defendant [Albrecht].

(Doc. No. 29 at 10 ¶ 49.)

Similarly, Finley points out that, to the extent Plaintiffs may have any § 1983 claim against him under Count IV, that claim rests on their allegation that he is liable to them for breaching a known duty "to train and supervise his agents/employees adequately" "regarding the use of excessive force." (*Id*. at 29 ¶¶ 61-62.)

Finley argues that insofar as he had any responsibility for creating, maintaining, and implementing police department policies or customs, or any responsibility for the training and supervision of police officers, those responsibilities were inherently wholly within his discretionary authority and duties as chief of police. (Doc. No. 34 at 6-8.) *See Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) ("To establish that the challenged actions were within the scope of his discretionary authority, a defendant must show that those actions were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority.").

In their response brief (Doc. No. 37 at 6-7), Plaintiffs do not disagree with Finley's argument; nor do they contend that Finley failed to meet his initial burden to demonstrate

that he was "acting within his discretionary authority.'" *Piazza*, 923 F.3d at 951.

Accordingly, for purposes of analyzing Finley's qualified immunity defense, the Court

concludes that Finley met his initial burden. *See Holloman ex rel. Holloman v. Harland*,

370 F.3d 1252, 1266 (11th Cir. 2004) ("[T]o pass the first step of the discretionary function

test for qualified immunity, the defendant must have been performing a function that, but

for the alleged constitutional infirmity, would have fallen with his legitimate job

description.").

In response to Finley's qualified immunity defense, Plaintiffs offer only the

following paragraph,

> Qualified immunity is a burden-shifting principle. "The qualified immunity
> analysis thus shifts the burden to [Plaintiffs], who must show that
> [Defendant] does not merit qualified immunity.["] *Morton v. Kirkwood*, 707
> F.3d 1276, 1281 (11th Cir. 2013). "Qualified immunity does not apply where
> the facts show that the official violated the plaintiff's constitutional rights
> and where the law established those rights at the time of the alleged
> misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232[] (2009). As explained
> in the analysis above, the Plaintiffs' constitutional rights were clearly
> established law at the time of the shooting, and the Defendants acted with
> deliberate indifference; thus, Counts II and IV of the Plaintiffs' Complaint
> should not be dismissed.

(Doc. No. 37 at 7.)

Although Plaintiffs acknowledge that the burden shifted to them, their response is

cursory and inadequate. Plaintiffs argue that "the analysis above" establishes that

"Defendants" violated Plaintiffs' clearly established rights, but nothing in the quoted

paragraph or "the analysis above" specifies, beyond repeating the conclusory allegations

of the complaint, how *Finley* violated Plaintiffs' clearly established rights through

unspecified policies he personally promulgated or through his provision of allegedly

inadequate police training. In "the analysis above," (*i.e.*, the argument at Doc. No. 37 at 6), Plaintiffs argue that supervisory liability attaches where there is a causal connection between the supervisor's conduct and the action of the subordinate's unconstitutional conduct. (Doc. No. 37 at 6 (citing *Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1236 (11th Cir. 2010)).) A causal connection can be established in several ways, including establishing that """a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so."" (*Id.* (quoting *Harper*, 592 F.3d at 1236 (quoting in turn *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003), *abrogated on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010))).)

Plaintiffs argue that four cases provide evidence of a history of widespread abuse that would have put Finley on notice of the need to correct the abuse. (*Id.*) Yet, Plaintiffs fail to explain[11] how the four cases they cite establish a historical pattern of widespread

---

[11] The four cases Plaintiffs reference are listed (without commentary) in a footnote to the factual allegations in the amended complaint. (Doc. No. 29 at 8 n.6.) Plaintiffs do not discuss how the facts of the four cases establish a historical pattern that would have put Finley on notice of the need to implement policy and train officers to avert the particular constitutional deprivation at issue in this case. Further, those cases are not so factually or temporally related to this one that such an explanation would be unnecessary. *Gunn v. City of Montgomery, Alabama, et al.*, Case No. 2:16-CV-557-WKW-JTA, involved allegations that, in the early morning hours of February 25, 2016, a Montgomery city police officer conducted a "stop and frisk" of an unarmed citizen who was walking along the street, then chased, tazed, and shot the citizen when the citizen fled, killing him. *Gunn v. City of Montgomery, Alabama*, Case No. 2:16-CV-557-WKW, 2018 WL 1740933, at *2 (M.D. Ala. Apr. 11, 2018) (Watkins, J.); *see also Gunn v. City of Montgomery, Alabama*, No. 2:16-CV-557-WKW, 2018 WL 1740933, at *2 (M.D. Ala. Apr. 11, 2018). *Pettaway v. Barber*, Case No. 2:19-cv-8-ECM-JTA, which is currently on appeal, involves allegations that, on July 8, 2018, Montgomery police officers unconstitutionally used a K-9 to attack a burglary suspect who was purportedly hiding in a vacant house, then failed to render first aid to prevent the suspect from bleeding to death from the wounds the dog inflicted. *See Pettaway v. Barber*, 645 F. Supp. 3d 1269 (M.D. Ala. 2022). *Canty v. City of Montgomery*, Case No. 2:20-cv-332-SMD, involved allegations that the Montgomery police department harassed and invaded the privacy of a Montgomery police officer because she divorced and filed domestic violence charges against her

abuse that would put Finley on notice that any particular policy or training was needed to prevent officers from engaging in the alleged conduct at issue in this case, *i.e.*, firing, unprovoked, into a stationary vehicle that contained individuals who were not giving any indication of fleeing, fighting, or resisting arrest. Hence, Plaintiffs' argument is unavailing to overcome Finley's qualified-immunity showing because Plaintiffs failed to establish a causal connection between Finley's conduct and the conduct of Officers Albrecht and Brown.

Because Plaintiffs failed to carry their burden to establish that Finley violated their constitutional rights, Finley is entitled to qualified immunity on Counts II and IV.

## C.     Count III

The City argues that it is entitled to dismissal of Plaintiffs' § 1983 claim for failure to properly train and supervise Officers Albrecht and Brown. (Doc. No. 34 at 8-10.) "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Rather, "[a] city may only be held liable under 42 U.S.C. § 1983 when the injury caused was a result of municipal policy or custom." *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir.

---

ex-husband, who was a friend of Finley's and a former officer of the Montgomery police department. (Doc. No. 1 in Case No. 20-cv-332.) *Hill v. City of Montgomery*, Case No. 20-cv-116-KFP, which is also currently on appeal, was dismissed on summary judgment on several grounds, including that no constitutional rights were violated and certain defendants were entitled to qualified and state-agent immunity. *Hill v. City of Montgomery, Alabama*, No. 2:20-CV-116-KFP, 2022 WL 17672617, at *16 (M.D. Ala. Dec. 14, 2022). *Hill* involved an incident that occurred on February 21, 2018, in which police allegedly attempted to stop and question an individual suspected of shooting another person, pursued the suspect after the suspect fired at one of the officers (hitting the officer in the foot), and ultimately fired at the suspect during the pursuit, killing him. *See id.*

2009). Therefore, to prevail on a § 1983 claim against a city, "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

As Plaintiffs correctly argue, they can establish the existence of an "official policy" by "identify[ing] either (1) an officially promulgated [City] policy or (2) an unofficial custom or practice of the [City] shown through the repeated acts of a final policymaker for the [City]." *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (citations omitted). Plaintiffs provide two sentences of argument to establish the source of their allegation that a municipal policy existed pursuant to which Officers Albrecht and Brown opened fire on Plaintiffs:

> The same analysis applied above to Defendant Ernest N. Finley, Jr.[,] applies to the actions of the Defendant municipality the City of Montgomery. As was stated in the Plaintiffs' complaint, both the City of Montgomery and Defendant Ernest N. Finley, Jr., sought to implement or further implement policies relating to the use of excessive force.

(Doc. No. 37 at 9.)

The problem with the first sentence of Plaintiffs' argument is, assuming "the same argument" they used to attempt to establish the existence of a policy promulgated by Finley applies equally to establishing the municipality's policy, that argument fails for the reasons stated in Section V.B. of this Memorandum Opinion and Order. The problem with the second sentence is, to the extent the complaint alleges that Finley and the City sought to implement policies relating to the use of excessive force, the only specific policies

15

referenced in the complaint are the "8 Can't Wait" policies designed to prevent unlawful police violence, policies Plaintiffs do not criticize.[12] And, as stated in the first sentence of their argument, Plaintiffs make clear that, to the extent they make allegations in their complaint of the existence of an *unspecified* municipal policy upon which they base their claims, they rely on their arguments against Finley to establish the existence of that municipal policy (*i.e.*, they contend that the City *lacked* an appropriate policy to remediate a known history of unconstitutional acts by police officers). Again, those arguments are unavailing for the reasons stated in Section V.B. of this Memorandum Opinion and Order.

Accordingly, the City is entitled to dismissal of Count III.

D.     Count V

---

[12] Although ambiguous on this point, when viewed in a light that is generously favorable to Plaintiffs, their complaint indicates that, by the time of the shooting, the City had adopted seven "8 Can't Wait" policies, and was in the process of adopting the eighth, which requires officers to intervene if another officer is committing an unconstitutional act. (Doc. No. 27 at 5 ¶ 17.) Plaintiffs do not at any point specifically allege in their complaint or argue in their response to the motion to dismiss that the lack of the eighth "8 Can't Wait" policy forms the basis of their claims. It is not the Court's duty to flesh out all possible arguments for Plaintiffs when considering a motion to dismiss, nor would it be appropriate for the Court to attempt to do so in the adversarial system upon which the federal judiciary operates. *See McCall Est. of McCall v. SSC Montgomery S. Haven Operating Co., LLC,* No. 2:14-CV-588-MHT-PWG, 2015 WL 13603823, at *5 (M.D. Ala. Aug. 6, 2015) ("In keeping with the maxim that 'the onus is upon the parties to formulate arguments,' the motion to dismiss is due to be denied." (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995)). Further, the Court notes that the amended complaint does not contain allegations that the "8 Can't Wait" policies were being adopted to address specific problems particular to the Montgomery police department of which the City and Finley were aware; rather, the amended complaint indicates the City adopted the "8 Can't Wait" policies "to send a message" "[i]n the wake of nationwide and local police brutality protests in the summer of 2020." (Doc. No. 29 at 4 ¶¶ 15-16.)

If true, the allegations in the complaint, construed in the light most favorable to Plaintiffs, support the conclusion that Gary Moncrief's death was caused by a bullet fired by Officer Albrecht, who was acting in concert with Officer Brown. (Doc. No. 29 at 4 ¶ 13; Doc. No. 29 at 7 ¶ 29; Doc. No. 29-1 at 4.) Yet, the City argues that it cannot be liable for Gary Moncrief's death because Gary Moncrief died from a self-inflicted gunshot wound to the head. (Doc. No. 34 at 10.) In support of this argument, the City refers to Gary Moncrief's death certificate. While acknowledging on a motion to dismiss[13] the Court is ordinarily "restricted to the four corners of the complaint,"[14] the City contends that the death certificate constitutes "[e]xtrinsic evidence [that] may be considered if it is central to the Plaintiff[s'] claim and if it[]s authenticity is not challenged." (Doc. No. 34 at 10 (citing *ThermoLife Int'l, LLC v. Hi-Tech Pharms., Inc.*, No. 1:15-CV-00892-ELR, 2018 WL 7077163, at *2 (N.D. Ga. Oct. 2, 2018), *report and recommendation adopted*, No. 1:15-

---

[13] When a party introduces matters outside the pleadings on a Rule 12(b)(6) motion to dismiss, the Court may treat the motion as if it were a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). In doing so, the court must give the parties "a reasonable opportunity to present all the material that is pertinent to the motion," Fed. R. Civ. P. 12(d), and "such a conversion requires notice to the parties and an opportunity for mutual discovery." *Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1168 (11th Cir. 2014). Defendants have conspicuously avoided asking the Court to convert the motion to one for summary judgment. Any such conversion will unnecessarily interpose significant delay while the parties conduct extensive discovery from both fact and expert witnesses as to Gary Moncrief's cause of death, as well as discovery related to pertinent records, such as police records and Gary Moncrief's medical records. Furthermore, on this record, there is no reason to conclude that such discovery may eliminate the factual dispute over the cause of death, as would be necessary to support a motion for summary judgment. Therefore, the Court, in its discretion, will not convert the motion to dismiss into a motion for summary judgment.

[14] *See Resnick*, 693 F.3d at 1321–22, 1324–25 (discussing the appropriate standard of review for considering a motion to dismiss).

CV-00892-ELR, 2019 WL 1225097 (N.D. Ga. Jan. 17, 2019) (citing in turn *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010); *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1267-68 (11th Cir. 2002)).)

The Court cannot even begin to consider the death certificate as grounds for dismissal because the City failed to submit the death certificate as an exhibit.[15]  Further, assuming for the sake of the argument that the death certificate indicates "Gary Moncrief died from a self-inflicted gunshot wound to the head" (Doc. No. 34 at 10), that still would not entitle the City to dismissal of the wrongful death claim at this stage of the litigation. In *Thermolife*, upon which the City relies, the court concluded that it would be inappropriate to consider extrinsic materials the defendants had submitted on a motion to dismiss because "the facts asserted in those documents could be disputed by the [p]laintiff, if given the opportunity." *ThermoLife*, 2018 WL 7077163, at *4; *see also Kennedy v. Dep't of Transp.*, No. 3:22-CV-645-RAH-JTA, 2024 WL 1602846, at *4 n.2 (M.D. Ala. Feb. 8, 2024), *report and recommendation adopted*, No. 3:22-CV-645-RAH, 2024 WL 965612 (M.D. Ala. Mar. 6, 2024) (noting the impropriety of granting a Rule 12(b)(6) motion in reliance on the contents of documents that the plaintiff had attached to his complaint while he simultaneously contested the veracity of those documents (citing *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) and *Gross v. White*, 340 F. App'x 527, 534 (11th Cir. 2009))). Plaintiffs' response to the motion to dismiss demonstrates that, while

---

[15] The City states in its motion that the death certificate is "attached" to the motion "as Exhibit 2." No exhibits are attached to the City's motion.

Janice Moncrief may not dispute the authenticity of the death certificate, she most certainly disputes the reliability of the conclusions stated therein and plans to do so even more vigorously after an opportunity for discovery. (Doc. No. 37 at 10-13; Docs. No. 37-1 through 37-3.) Moreover, the death certificate itself is not "central" to the wrongful death claim in the sense that it could not serve as grounds for a Rule 12(b)(6) dismissal of that claim. *See Sprengle v. Smith Mar. Inc*., 660 F. Supp. 3d 1337, 1351 (M.D. Fla. 2023) (collecting cases and explaining that the incorporation-by-reference doctrine "is inapplicable when the plaintiff neither references nor relies upon the extrinsic document in the complaint…. [n]or does it apply unless the documents are so central to the claim that they serve as a basis for the complaint, such that the plaintiff must have been aware of their existence").

For these reasons, the Court will not consider the death certificate's alleged contents at this stage of the litigation. Because the City's motion to dismiss the wrongful death claim is wholly reliant on the death certificate to contest Gary Moncrief's cause of death, the City is not entitled to a Rule 12(b)(6) dismissal of the wrongful death claim.

E.     Count VI

In Count VI of the complaint, Plaintiffs allege that Officers Brown and Albrecht negligently breached "a duty to provide ordinary care to all Plaintiffs" when they "commit[ed] such horrendous actions against the Plaintiffs, including, but not limited to, shooting at close range into the vehicle that they occupied, using deadly force without warning, and failing to attempt an alternative to the use of deadly force." (Doc. No. 29 at 14.) Officers Brown and Albrecht argue that Count VI is due to be dismissed due to

discretionary function immunity afforded by Ala. Code 1975 § 6-5-338 and state agent immunity afforded by *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000) and its progeny. (Doc. No. 34 at 4-5.) "*Cranman's* test for state-agent immunity also governs whether law enforcement officers are entitled to statutory, discretionary-function immunity under § 6–5–338(a)." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1255 (11th Cir. 2010) (citing *Hollis v. City of Brighton*, 950 So. 2d 300, 307–09 (Ala. 2006)); *see also Hunter v. Leeds*, 941 F.3d 1265, 1283 (11th Cir. 2019) (noting that "[t]he restatement of state-agent immunity set out by the Alabama Supreme Court in [*Cranman*]," as modified by *Hollis*, "governs whether the [police] officers are entitled to immunity under § 6–5–338(a)" (citing *Brown v. City of Huntsville*, 608 F.3d 724, 741 (11th Cir. 2010) (citing in turn *Ex parte City of Tuskegee*, 932 So. 2d 895, 904 (Ala. 2005)))).

In asserting the defense of state agent and discretionary function immunity, Officers Brown and Albrecht bear the initial burden of demonstrating that they were "acting within the ambit of [their] discretionary functions" as state actors when they fired into Plaintiffs' vehicle. *Grider*, 618 F.3d at 1256. Section 13A-3-27, Ala. Code 1975, provides that "[a] peace officer is justified in using deadly physical force upon another person when and to the extent that he reasonably believes it necessary in order … [t]o make an arrest for a felony or to prevent the escape from custody of a person arrested for a felony, unless the officer knows that the arrest is unauthorized." Ala. Code 1975 § 13A-3-27(b). Plaintiffs do not appear to dispute that, pursuant to § 13A-3-27(b), Officers Brown and Albrecht were acting within the scope of their authority to use deadly force to apprehend Gary Moncrief, who was suspected of kidnapping. (Doc. No. 37 at 5 (Plaintiffs' arguments that Officers

Brown and Albrecht "were not acting in their discretionary duties towards the three passengers [sic] that survived the encounter" because "none of the … situations" outlined in § 13A-3-27 for justified use of deadly force "apply to the three passengers [sic]").) Plaintiffs do not explain how the presence of the three survivors of the shooting somehow removes the use of deadly force against Gary Moncrief from within the ambit of the officers' discretionary functions otherwise allowed under § 13A-3-27. Accordingly, for purposes of analyzing the motion to dismiss, the Court will presume that the use of deadly force fell within the ambit of the two officers' discretion to use deadly force they reasonably believed necessary to make a valid arrest for a felony.

When evaluating the applicability of state agent and discretionary function immunity, once a defendant police officer makes the requisite showing that the challenged conduct falls within the ambit of his or her discretion, the burden shifts "to the plaintiff to show 'bad intent'—that the officer acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority—in order to defeat the officer's discretionary-function" or state-agent immunity. *Grider*, 618 F.3d at 1255-56. That is, "Plaintiffs can pierce both state-agent immunity and discretionary-function immunity by showing that Defendants [Brown and Albrecht] acted 'willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.'" *Id.* (quoting *Hollis*, 950 So. 2d at 307).

Plaintiffs argue that, pursuant to Montgomery Police Department policy as confirmed to the public by Mayor Reed and Finley, Officers Brown and Albrecht were barred from shooting into an occupied vehicle when that vehicle was blocked in and could

not move, when deadly force was not necessary to stop a fleeing felon, and when the officers had no reason to believe that their safety or the safety of others was endangered. (Doc. No. 37 at 3-6.) In response, Officers Brown and Albrecht do not deny that shooting into an occupied, stationary vehicle without provocation or reason to fear danger was unauthorized under Montgomery Police Department policy. Nor do they argue that the shooting was justified by the need to stop a fleeing felon. Instead, they argue that they had reason to believe that they were in danger (or that others were in danger) because, before opening fire, they heard a gunshot that later turned out to have been Gary Moncrief shooting himself in the head. (Doc. No. 40 at 2-3.)

The problem with the officers' argument is that it is premature and not appropriate at the motion-to-dismiss stage. As discussed in more detail above in Section V.D. of this Memorandum Opinion and Order, when evaluating a Rule 12(b)(6) motion to dismiss, the Court takes the facts alleged in the complaint as true and construes them in the light most favorable to Plaintiffs. *Resnick*, 693 F.3d at 1321–22. (*See also* Doc. No. 34 at 3 (Defendants' motion to dismiss acknowledging the appropriate standard of review).) The amended complaint, construed in the light most favorable to Plaintiffs, contains allegations that, if true, are sufficient to establish that Gary Moncrief's death was caused by a bullet fired by Officer Albrecht, who was acting in concert with Officer Brown. To the extent that there is an evidence-based, factual dispute whether Gary Moncrief fired a gun before the officers opened fire, as explained in Section V.D., that issue is appropriately one for resolution at a later stage of this litigation. It follows, then, that Officers Brown and Albrecht are prematurely arguing that they are entitled to state agent and discretionary

function immunity on grounds that Montgomery Police Department policy permitted them to open fire in response to Gary Moncrief first discharging a firearm.

Accordingly, state law immunity principles do not entitle Officers Brown and Albrecht to dismissal of Plaintiffs' negligence claim against them at this time.

## VI.   CONCLUSION

Accordingly, it is ORDERED that the motion to dismiss (Doc. No. 34) is GRANTED IN PART and DENIED IN PART as follows:

1.   The motion is DENIED as to Count I, Plaintiffs' § 1983 excessive force claim against Officers Brown and Albrecht.

2.   The motion is GRANTED as to Count II only[16] against Defendant Finley in his individual capacity for unlawful use of excessive force in violation of § 1983.

3.   The motion is GRANTED as to Count III, Plaintiffs' § 1983 claim against the City for failure to properly train and supervise.

4.   The motion is GRANTED as to Count IV with respect to Plaintiffs' § 1983 claim against Defendant Finley in his individual capacity for failure to properly train and supervise;

5.   The motion is DENIED as to Count V, Plaintiffs' state law claim against the City for wrongful death.

---

[16] Defendants did not move for dismissal of the § 1983 claim against the City for unlawful use of excessive force, which is alleged in Count II. That claim remains pending.

6.    The motion is DENIED as to Count VI, Plaintiffs' state law negligence claim

against Officers Brown and Albrecht.

DONE this 10th day of September, 2024.

_____

JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE