IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JANICE MONCRIEF, individually, and as Administratrix of the Estate of Gary Moncrief, deceased, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 2:23-cv-331-JTA (WO) |
| CITY OF MONTGOMERY, a municipal corporation of the State of Alabama, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Before the Court[1] is the motion to set aside entry of default filed by Defendants City

of Montgomery, James Albrecht, and Christopher Brown. (Doc. No. 117.) For the reasons

stated below, the motion is due to be granted.

## I.    JURISDICTION

This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to

28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over their state law claims

pursuant to 28 U.S.C. § 1367. The parties do not contest personal jurisdiction or venue,

and there are adequate allegations to support both. *See* 28 U.S.C. § 1391.

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge
pursuant to 28 U.S.C. § 636(c).

## II.    FACTS AND PROCEDURAL HISTORY[2]

This case arises out of an incident on May 18, 2021. On that date, Defendants James Albrecht and Christopher Brown, police officers for the City of Montgomery, used deadly force by firing into a vehicle that was occupied by four people. One of the occupants, Gary Moncrief, died due to a gunshot wound.

Over two years ago, on May 17, 2023, Plaintiffs Janice Moncrief, Gary Moncrief's mother and next of kin who sues in both her representative and individual capacities, along with Plaintiffs Benita Moncrief and Tamara Acree,[3] filed this action against Defendants City of Montgomery, Ernest N. Finley, Jr., James Albrecht, and Christopher Brown. (Doc. No. 1.) For purposes of this memorandum opinion, the Court will refer to Defendants City of Montgomery, James Albrecht, and Christopher Brown as the Original Defendants.[4]

After substantial litigation, including early discovery, resolution of a motion to dismiss, the filing of an amended complaint, and the filing of answers, on December 11, 2024, the Court entered a scheduling order that stated: "Motions to amend the pleadings and to add parties shall be filed by the parties on or before February 24, 2025." (Docs. No.

---

[2] Due to the voluminous record, this statement of procedural history contains only a summary of events relevant to the motions that were the subject of the hearing held on July 24, 2025.

[3] Plaintiffs Janice Moncrief, Benita Moncrief, and Tamara Acree were among the occupants in the vehicle during the May 18, 2021 incident.

[4] By Order entered September 10, 2024, the Court dismissed Plaintiffs' claims against Defendant Finley. (Doc. No. 42.)

1–48; Doc. No. 49 at 2 ¶ 2.) Subsequently, the Court ordered the parties to mediate, which was unsuccessful.[5] (Docs. No. 51–58.)

On February 21, 2025, Plaintiffs filed an unopposed motion to extend the deadline to amend the pleadings. (Doc. No. 59.) On February 24, 2025, Plaintiffs filed an unopposed amended motion to extend the deadline to amend the pleadings. (Doc. No. 60.) On February 24, 2025, the Court entered the following text order:

> For good cause, it is ORDERED that Plaintiffs' [Doc. No. 59] Unopposed Motion to Extend Time to Amend the Pleadings and Amended Unopposed [Doc. No. 60] Motion to Extend Time to Amend the Pleadings are GRANTED. The December 11, 2024 [Doc. No. 49] Scheduling Order is AMENDED solely to the following extent: the deadline to file a motion to amend the pleadings is EXTENDED to and including March 10, 2025.

(Doc. No. 61.)

On March 7, 2025, Plaintiffs filed another unopposed motion to extend the deadline to amend the pleadings. (Doc. No. 66.) On March 10, 2025, Plaintiffs filed an amended unopposed motion to extend time to amend the pleadings. (Doc. No. 69.) The Court granted the March 10, 2025 amended unopposed motion to extend the time to amend the pleadings,

---

[5] Plaintiffs failed to timely file the document titled "Notice Concerning Mediation" as required by the Court's December 11, 2024 order directing the parties to mediate. (*See* Doc. No. 51 at 2.) In response to a February 25, 2025 order to file the notice and show cause why they had not timely done so, Plaintiffs filed the notice and a separate document showing cause why they did not timely file the notice. (Docs. No. 62–64.) Notably, Plaintiffs apologized for the delay and stated they "did not intend to miss a deadline imposed in an order of this Honorable Court and ask[ed] that this Honorable Court not penalize the Plaintiffs for this unintentional oversight." (Doc. No. 64 at 2 ¶ 5.) At no point in this litigation in response to Plaintiffs missing any deadline or failing to comply with the Federal Rules of Civil Procedure or court orders did the Original Defendants seek relief under Rule 41(b) or otherwise attempt to capitalize on the situation. *See* Fed. R. Civ. P. 41(b) ("If the plaintiff fails . . . to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it.").

extended the deadline to amend until March 17, 2025, and denied the March 7, 2025 motion to extend the time to amend the pleadings as moot. (Docs. No. 70, 71.)

On March 17, 2025, Plaintiffs again filed an unopposed motion for extension of time to amend the pleadings due to the logistical requirements of filing under seal some of the anticipated exhibits to the complaint. (Doc. No. 72.)

On March 18, 2025, one day after the expiration of the then-existing deadline to amend, Plaintiffs filed a motion for leave to amend the complaint, which did not have attached to it a proposed amended complaint, as is required by the Court's local rules. (Doc. No. 73.) *See* M.D. Ala. LR 15.1. On the same date, Plaintiffs filed a second amended complaint without leave of court and a notice that exhibits to the second amended complaint were filed conventionally under seal. (Docs. No. 74–75.) The second amended complaint added new claims and named ten additional defendants ("the New Defendants"), eight of whom counsel for the Original Defendants also now represents. (Doc. No. 74.)

On March 25, 2025, the Court entered orders granting Plaintiffs' March 18, 2025 motion for leave to amend the complaint, deeming the second amended complaint timely filed, and denying as moot Plaintiffs' March 17, 2025 motion for an extension of time to amend the complaint. (Docs. No. 77, 78.)

On May 7, 2025, because the Original Defendants had not answered the second amended complaint, Plaintiffs filed an application for entry of default. (Doc. No. 94.) On May 20, 2025, the Clerk of Court entered default against the Original Defendants. (Doc. No. 108.)

On May 21, 2025, all Defendants jointly filed an unopposed motion for an extension of time for the New Defendants to answer or otherwise respond to the second amended complaint. (Doc. No. 113.) In the motion, they pointed out that uniform rather than staggered deadlines for the New Defendants to answer or otherwise respond to the second amended complaint would serve judicial efficiency and the ends of justice[6] by allowing consolidated briefing. (*Id*.) They sought a consolidated deadline of June 4, 2025, for the New Defendants to answer or otherwise respond to the second amended complaint. (*Id*. at 3.) The Court granted the motion. (Doc. No. 114.)

On May 21, 2025, the Original Defendants moved the court to set aside the entry of default. (Doc. No. 117.) They acknowledged the deadline for their response to the second amended complaint ran on April 1, 2025.[7] (*Id*. at 1 ¶ 2.) They explained the delay was

---

[6] The proposed uniform deadline would also facilitate the plans of counsel for two of the New Defendants to travel outside the United States on his honeymoon. (Doc. No. 2 at 2 ¶ 6.)

[7] That Plaintiffs filed their second amended complaint late and without leave of court contributed to the confusion and delay. When the Court entered an order granting leave to amend seven days after Plaintiffs filed the second amended complaint, the Court retroactively deemed the second amended complaint timely filed. (Doc. No. 77.) At that point, seven of the fourteen days for the Original Defendants to answer or respond to the second amended complaint had already run. Fed. R. Civ. P. 15 (a)(3) ("Unless the court orders otherwise, any required response to an amended pleading must be made . . . within 14 days after service of the amended pleading."). Under the circumstances, it is somewhat understandable (although still error) how, as the Original Defendants contend, the deadline for an answer was unclear to the Original Defendant's counsel and counsel's legal assistant failed to calendar the deadline. Yet, confusion as a result of Plaintiffs' improper procedures is not the primary cause of the Original Defendants' delay in responding to the second amended complaint. The primary cause was counsel's decision to assume he could file all his clients' answers at the same time, without attempting to reach an agreement with Plaintiffs and, more importantly, without seeking leave of court. *Stone v. City of Mobile*, 2007 WL 505057, *2 (S.D. Ala. Feb. 13, 2007) ("[E]xtensions of deadlines imposed by court orders and the Federal Rules of Civil Procedure can be granted only by the Court, and not by stipulation or agreement among the parties.").

caused by counsel's scheduling conflicts and his "failure to thoroughly research a misinformed impression that the [Original Defendants] could align, timewise, their response [with] the [New Defendants] so that all defendants proceeded in this case on the same timeline."[8] (*Id.* at 2–3 at ¶ 9.) The Original Defendants admitted that "[n]o doubt, in hindsight, better practice would have been to file a motion seeking to extend the deadline for Defendants until such time after all new defendants were served and their response time(s) set." (*Id.* at 3 ¶ 6.) Nevertheless, the Original Defendants pointed out that setting aside the entry of default would not delay the proceedings because the New Defendants had yet to respond to the second amended complaint. (*Id.* at ¶ 7.)

On May 23, 2025, the Court entered an order requiring Plaintiffs to show cause, on or before June 5, 2025, why the Original Defendants' motion to set aside the entry of default should not be granted. (Doc. No. 119.) The order also required the Original Defendants to file a reply not later than June 12, 2025. (*Id.*) Plaintiffs timely responded to the order to show cause. (Doc. No. 125.) The Original Defendants timely filed a reply. (Doc. No. 145.)

On June 3, 2025, all Defendants jointly filed a second unopposed motion to extend the deadline for the New Defendants to answer or otherwise respond to the second amended complaint. (Doc. No. 123 at 2.) The Court granted the motion and extended the deadline to June 11, 2025. (Doc. No. 124.)

---

[8] The Original Defendants have also offered other explanations for the failure to timely respond to the second amended complaint, such as clerical oversight. (Doc. No. 145 at 1–2.)

On June 11, 2025, the Original Defendants filed answers to the second amended complaint.[9] (Docs. No. 136, 137, 141.) Also on June 11, 2025, eight of the New Defendants,[10] along with the Original Defendants, jointly filed a partial motion to dismiss. (Doc. No. 135.) On June 12, 2025, the Court entered an order requiring Plaintiffs to show cause, on or before June 26, 2025, why the partial motion to dismiss should not be granted. (Doc. No. 143.) The Court required the defendants who filed the motion to file a reply not later than July 3, 2025. (*Id.*) Plaintiffs timely filed a response. (Doc. No. 148.) On July 1, 2025, the eight New Defendants and the Original Defendants filed an unopposed motion to extend the time to file their reply until July 10, 2025, which the Court granted. (Docs. No. 151, 152.) They timely filed their reply, and their partial motion to dismiss is under submission before the court. (Doc. No. 156.)

On June 26, 2025, while the parties were in the process of briefing motions to dismiss the second amended complaint, Plaintiffs filed a "Notice of Correction of Second Amended Complaint." (Doc. No. 146.) Attached to the notice was a document titled "Second Amended Complaint," which was substantially identical to the March 18, 2025

---

[9] The Original Defendants joined motions seeking extensions of time for the New Defendants to respond to the Second Amended Complaint. (Docs. No. 113, 123.) However, the Original Defendants did not move for leave of court for an extension of the deadline for *themselves* to answer or file a motion to dismiss in response to the Second Amended Complaint. Fed. R. Civ. P. 15(a)(3) ("[A]ny required response to an amended pleading must be made . . . within 14 days after service of the amended pleading."). Accordingly, the Original Defendants' answers and partial motions to dismiss were untimely filed.

[10] The eight New Defendants who jointly filed the motion to dismiss along with the Original Defendants are represented by the same counsel as the Original Defendants. The remaining two New Defendants, who are represented by separate counsel, filed a separate partial motion to dismiss on the same day. (Doc. No. 134.)

second amended complaint, except that it alleged a different statutory basis for Count IV, a civil claim for conspiracy. (Doc. No. 74 at 28–30; Doc. No. 146-1 at 29.) Plaintiffs contended the change was due to a clerical error in drafting the original version of the second amended complaint. (Doc. No. 146.) Additionally, unlike the second amended complaint, to which Plaintiffs attached numerous exhibits, Plaintiffs attached no exhibits to the corrected version of the second amended complaint.[11] On June 30, 2025, the Court construed the notice as a motion for leave to amend the complaint and denied the motion on grounds that it was "untimely and d[id] not seek relief pursuant to Rules 6(b)(1)(B) and 16(b)(4) of the Federal Rules of Civil Procedure." (Doc. No. 150.)

On July 9, 2025, the Court entered an order setting the Original Defendants' motion to set aside the entry of default for a hearing on July 24, 2025, at 1:30 p.m. (Doc. No. 155.)

On July 14, 2025, all parties filed a joint motion to amend the scheduling order, seeking "to extend the allowable time for discovery and adjust other pending deadlines

---

[11] The difference in the existence of attachments, as well as the shift in statutory basis for Count IV, was material. Had the Court allowed the action to proceed on the revised version of the second amended complaint, the second amended complaint (with its attached exhibits) would have been rendered a nullity, and the motions to dismiss the previous version of the second amended complaint would have become moot. *Smith v. Franklin*, No. 2:24-cv-361-JTA, 2024 WL 4438317, at *1 (M.D. Ala. Oct. 7, 2024). In light of these issues, Plaintiffs' failure to move for leave to amend and for relief from the Court's scheduling deadlines was inappropriate.

Moreover, had the revised second amended complaint been allowed, it would have mooted the Clerk's entry of default as well. *Goldman v. Hart*, No. 1:24-CV-175-LMM-CMS, 2024 WL 1957345, at *4 (N.D. Ga. Mar. 22, 2024), *report and recommendation adopted*, No. 1:24-CV-00175-LMM-CMS, 2024 WL 3833812 (N.D. Ga. May 13, 2024). That is, had Plaintiffs succeeded in their gambit to amend the pleadings without a motion, there would be no entry of default at this time to set aside.

accordingly." (Doc. No. 157 at 1.)  The parties request the court to set the case for the August 3, 2026 trial term and adjust the remaining deadlines in the case accordingly.[12]

On July 15, 2025, the Court set the parties' joint motion to amend the scheduling order for a hearing on July 24, 2025, at 1:30 p.m. (Doc. No. 158.)

The motion to set aside entry of default is ready for disposition.

### III.    STANDARD OF REVIEW

In the Eleventh Circuit, default judgments are disfavored, and courts respect the preference for deciding cases on their merits. *Varnes v. Local 91, Glass Bottle Blowers Ass'n of United States and Canada*, 674 F.2d 1365, 1369 (11th Cir. 1982); *Trustgard Ins. Co. v. Daniels*, No. 4:19-cv-130, 2020 WL 762541, at *3 (S.D. Ga. Feb. 14, 2020) ("[D]efaults are disfavored, and the Eleventh Circuit has cautioned that a litigant should be afforded "his or her day in court, if possible."" (quoting *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1342 (11th Cir. 2014))). Additionally, "the federal rules" themselves "favor a decision on the merits," and "[c]ourts construe the federal rules in general and pleadings in particular to do substantial justice." *Varnes*, 674 F.2d at 1371 (citing Fed. R. Civ. P. 1). Hence, ""[d]efaults are reserved for rare occasions[,] and when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party."" *Stone*, 2007 WL 505057, at *1 (quoting *Canfield v. VSH Restaurant Corp.*, 162 F.R.D. 431, 434 (N.D.N.Y. 1995)).

---

[12] By separate order, the Court will address the motion to amend the scheduling order.

Federal Rule of Civil Procedure 55(a) provides: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." However, "'[a] clerk's entry of default, pursuant to Rule 55(a), is distinct from a *judgment* by default entered . . . pursuant to Rule 55(b).'" *Trustgard*, 2020 WL 762541, at *2 (quoting *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 n.5 (11th Cir. 2007) (per curiam) (emphasis added in *Trustgard*)). "This distinction is important; a court may only vacate a default judgment 'in accordance with Rule 60(b),' which is a 'more rigorous standard' than that used to 'set[ ] aside an entry of default.'" *Id.* (quoting *EEOC v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990)). Entry of default, by contrast, may be set aside upon a showing of "good cause." Fed. R. Civ. P. 55(c).

The Circuit has provided the following guidance regarding relevant factors for determining the existence of good cause:

> "'Good cause' is a mutable standard, varying from situation to situation. It is also a liberal one—but not so elastic as to be devoid of substance." *Coon v. Grenier*, 867 F.2d 73, 76 (1st Cir. 1989). We recognize that "good cause" is not susceptible to a precise formula, but some general guidelines are commonly applied. *Id.* Courts have considered whether the default was culpable or willful, whether setting it aside would prejudice the adversary, and whether the defaulting party presents a meritorious defense. *Rafidain Bank*, 15 F.3d at 243; *see also Robinson v. United States*, 734 F.2d 735, 739 (11th Cir. 1984). We note, however, that these factors are not "talismanic," and that courts have examined other factors including whether the public interest was implicated, whether there was significant financial loss to the defaulting party, and whether the defaulting party acted promptly to correct the default. *E.g., Dierschke v. O'Cheskey*, 975 F.2d 181, 184 (5th Cir. 1992). "Whatever factors are employed, the imperative is that they be regarded simply as a means of identifying circumstances which warrant the finding of 'good cause' to set aside a default." *Id.* However, if a party willfully defaults by displaying either an intentional or reckless disregard for the judicial

proceedings, the court need make no other findings in denying relief. *Shepard Claims Service, Inc. v. William Darrah & Associates*, 796 F.2d 190, 194–95 (6th Cir. 1986).

*Compania Interamericana Exp.-Imp., S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951–52 (11th Cir. 1996).

## IV.    DISCUSSION

As noted above, "[i]n determining whether the requisite good cause exists," for relief from entry of default, "courts balance an array of factors, including principally whether the default was willful, whether the plaintiff would be prejudiced by a set-aside, and whether the defendant had a meritorious defense." *Stone*, 2007 WL 505057, at *1. In the present situation, those factors warrant vacating the entry of default.

First, the default falls short of culpable and willful conduct. Counsel for the Original Defendants rightfully admits, rather than ignoring his confusion about the deadline and assuming he could file all his clients' answers and responses at once, he should have properly researched the issue and filed an appropriate motion. While he may have been negligent in failing to follow the proper procedures in this matter, his actions are not indicative of bad faith or "willfull[] default[] by displaying either an intentional or reckless disregard for the judicial proceedings." *Compania Interamericana*, 88 F.3d at 952. Instead, however flawed his actions, he has demonstrated due regard for the "just, speedy, and inexpensive determination of" this action. Fed. R. Civ. P. 1. *See generally* 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2693 (noting that mechanisms for entry of default and default judgment exist not only to "enforc[e] compliance with the rules of procedure" but also to "facilitat[e] the speedy determination

of litigation"); *cf. Walter v. Blue Cross & Blue Shield United of Wisconsin*, 181 F.3d 1198, 1201–02 (11th Cir. 1999) (holding, in the more demanding context of a motion to vacate a default judgment, that the district court properly granted the motion since counsel did not act in bad faith by failing to meet the deadline to respond to a motion to dismiss, the defendant was not prejudiced by the delay, and forgiving the default would not "foster disrespect for any rules").[13]

Second, as a practical matter, setting aside the entry of default will not prejudice any party or materially affect the orderly disposition of this action. Though counsel for the Original Defendants should have acted more quickly to seek judicial relief for his failure to timely answer on behalf of three of his eleven clients, he has timely taken the necessary steps to prevent his error from causing delay or prejudice. Rather than causing a snarl in the proceedings with multiple staggered motions to dismiss, his actions had the net effect of simplifying the docket by enabling eleven defendants to file a single consolidated partial motion to dismiss. In fact, that partial motion to dismiss is already under submission and ready for the court's review. Hence, due to counsel's efforts, his failure to timely answer the second amended complaint has prejudiced neither the other parties nor the timing of the proceedings on the merits.

Third, as demonstrated by the Original Defendants' answers and partial motions to dismiss, they assert substantial, potentially meritorious legal and factual defenses to the

---

[13] In *Walter*, some of the delay was attributable to the failure of counsel's secretary to properly calendar the deadline, but an additional two weeks of delay were due to counsel's own neglect. *Walter*, 181 F.3d at 1201–02.

claims against them. Specifically, they raise defenses of qualified immunity, deny Plaintiffs' factual allegations, and contend the evidence will show they did not cause the decedent's death. *See Alonso v. Alonso*, No. 22-10607, 2023 WL 309588, at *3 (11th Cir. Jan. 19, 2023) (holding the defendant "presented two potentially meritorious defenses" when she raised certain colorable factual and legal defenses to the claims, and affirming the district court's decision to vacate the entry of default); *Stone*, 2007 WL 505057, at *3 (finding, for purposes of analyzing a motion to set aside entry of default, that the defendant raised a meritorious defense by filing an answer that "denie[d] the material factual allegations of the Complaint and propound[ed] 11 affirmative defenses that may potentially be meritorious"); *cf. Coniglio v. Bank of Am.*, NA, 638 F. App'x 972, 974 (11th Cir. 2016) (holding that, to gain postjudgment relief from a default judgment, the defaulting party must "establish mistake, inadvertence, or excusable neglect" by "show[ing] . . . it had a meritorious defense that might have affected the outcome" (citations and quotation marks omitted)).

Fourth, although not one of the traditional factors considered in setting aside the entry of default, this matter has all the hallmarks of one in which entry of default "was wholly unnecessary and eminently avoidable, were it not for a series of unfortunate decisions by both sides." *Stone*, 2007 WL 505057, at *3. Defense counsel not only failed to obtain the court's leave to delay some of his clients' responses in order to streamline the proceedings, but he also failed to timely contact Plaintiffs' counsel to attempt to reach a consensus on such a motion. *Id*. Furthermore, this is not a situation where defendants wholly failed to appear. The Original Defendants have been diligently litigating this case

for years. Opposing counsel are capable of productive communications, and they frequently have shown professional comity in a number of situations.[14] Under these circumstances,

> [Plaintiffs'] counsel is not absolved from responsibility for the manner in which these events unfolded. Notwithstanding [the Original Defendants'] counsel's errors as set forth above, perhaps a more prudent, and certainly more efficient, response by [Plaintiffs'] counsel would have been to contact [her] counterpart counsel to advise of [her] intention to seek entry of default unless an answer were filed immediately. Yet [Plaintiffs'] counsel did not do so. The Court strongly suspects that a simple phone call would have obviated the need for the Application for Entry of Default, or the subsequent expenditure of litigant and judicial resources in the ensuing litigation to set aside the default.

*Stone*, 2007 WL 505057, at *3; *see also Compania Interamericana*, 88 F.3d at 951–52 (noting that factors other than the traditional three may be appropriate for consideration when evaluating a motion to set aside entry of default).

Viewed collectively, these circumstances constitute "good cause" for setting aside the entry of default pursuant to Rule 55(c). *Stone*, 2007 WL 505057, at *3 (setting aside entry of default where the "[d]efendant's failure to file a responsive pleading prior to the entry of default may have been careless and was certainly preventable, but it was not culpable or willful," the plaintiff was not prejudiced by the delay, and the answer contained defenses that were potentially meritorious); *Fla. Physician's Ins. Co. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993) (noting, in discussing the more stringent standard applicable to motions to set aside default judgments, "a technical error or a slight mistake by a party's

---

[14] Notably, counsel for the Original Defendants has shown forbearance when Plaintiffs' counsel missed deadlines or failed to follow applicable rules.

attorney should not deprive the party of an opportunity to present the merits of his claim"
(citation and quotation marks omitted)).

## V.    CONCLUSION

Accordingly, the motion to set aside entry of default (Doc. No. 117) is due to be
granted. A separate order shall issue.

Counsel for both parties are REMINDED to continue communicating with one
another to reach an understanding (and, preferably, agreement) if any of them seeks an
extension of deadlines or other relief from court orders, the Court's local rules, or the
Federal Rules of Civil Procedure. Counsel are further REMINDED to file the appropriate
motions, when required, to obtain the court's permission for extended deadlines or to
address other such procedural matters.

Finally, Plaintiffs and the Original Defendants have missed deadlines in this case,
including some deadlines not mentioned in this Memorandum Opinion. The Court
ADVISES all counsel that this case will proceed to a resolution in an orderly, efficient
manner. To that end, and especially in light of the recent significant expansion of this case
via the second amended complaint, **all counsel should be mindful of their responsibility
to familiarize themselves and strictly comply with court orders and all applicable
rules and deadlines**. The Court will not be inclined to show leniency or extend deadlines
if doing so will cause unwarranted delay or interfere with the orderly disposition of this
action. Should any counsel's procedural lapses inhibit the efficient resolution of this case,
counsel will be appropriately held to account.

DONE this 25th day of July, 2025.


_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE