IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JANICE MONCRIEF, as Administratrix )
of the Estate of Gary Moncrief, deceased, )
and in her individual capacity, BENITA )
MONCRIEF, and TAMARA ACREE, )
                                        )
        Plaintiffs, )
                                        )
v. )   CASE NO. 2:23-cv-331-JTA
                                        ) (WO)
CITY OF MONTGOMERY, a municipal )
corporation of the State of Alabama, et al., )
                                        )
        Defendants. )

## <u>MEMORANDUM OPINION</u>

Before the Court[1] is the Partial Motion to Dismiss Plaintiffs' Second Amended Complaint filed by Defendants City of Montgomery ("City"), James Albrecht, Christopher Brown, Bianka Ruiz, D'Shana Snyder, Laquita Clark, Alix Payne, Jr., Brian Dixon, Ed Jones, Ralph Tucker, and Raynard Dabney.[2] (Doc. No. 135.) For the reasons stated below, the motion will be granted in part and denied in part; Counts II, IV, VII, and IX of the Second Amended Complaint will be dismissed with prejudice; and Defendants Ruiz, Snyder, Clark, Payne, Dixon, Jones, Tucker, and Dabney will be dismissed from this action.

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Docs. No. 22, 23, 149.)

[2] The individual defendants who joined the motion are police officers for the Montgomery, Alabama police department ("MPD").

## I.     JURISDICTION AND VENUE

This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over their state law claims pursuant to 28 U.S.C. § 1367. The parties do not contest personal jurisdiction or venue, and Plaintiffs' allegations are adequate to support both. *See* 28 U.S.C. § 1391.

## II.     STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court takes the facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012). To avoid dismissal, the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted). While Federal Rule of Civil Procedure 8(a) "does not require 'detailed factual allegations'. . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A complaint is insufficient if it "offers labels and conclusions or a formulaic recitation of the elements of a cause of action," or if it "tenders naked assertions devoid of further factual enhancement." *Id*. (internal quotations omitted)

(quoting *Twombly*, 550 U.S. at 555, 557). In short, a complaint must provide a "'plain statement possess[ing]' enough heft to 'show that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 557 (internal quotations omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

## III.    PROCEDURAL HISTORY

This case arises out of a May 18, 2021 incident in which Defendants Christopher Brown and James Albrecht used deadly force by firing into a vehicle occupied by four individuals. In the incident, one of the occupants, Gary Moncrief, died from a gunshot wound. On May 17, 2023, the other three occupants—Plaintiff Janice Moncrief, who sues in her individual capacity and in her representative capacity as Gary Moncrief's mother and next of kin, along with Plaintiffs Benita Moncrief and Tamara Acree—filed this suit against Defendants Brown, Albrecht,[3] the City, and Ernest N. Finley[4] ("the Original Defendants"). (Doc. No. 1.)

On March 18, 2025,[5] Plaintiffs filed a motion for leave to amend their complaint and a Second Amended Complaint[6] in which they asserted claims against the Original

---

[3] Plaintiffs originally filed suit against Defendants Brown and Albrecht under fictitious names. (Doc. No. 1.) The Court allowed a period of limited discovery for Plaintiffs to discover the names of the two officers. (Doc. No. 28.) *Moncrief v. City of Montgomery*, No. 2:23-cv-331-JTA, 2023 WL 5444654 (M.D. Ala. Aug. 23, 2023). After that discovery period, Plaintiffs filed their First Amended Complaint identifying Defendants Brown and Albrecht by name. (Doc. No. 29.)

[4] The Court dismissed Defendant Ernest Finley in an order entered September 10, 2024. (Doc. No. 42.) *Moncrief v. City of Montgomery*, No. 2:23-cv-331-JTA, 2024 WL 4142655 (M.D. Ala. Sept. 10, 2024).

[5] The Court pretermits unnecessary discussion of pleadings, motions, filings, and orders filed in the interim between the original complaint and Second Amended Complaint. That history is summarized in the Memorandum Opinion entered July 25, 2025. (Doc. No. 163.) *Moncrief v. City of Montgomery*, No. 2:23-cv-331-JTA, 2025 WL 2098345, at **1–4 (M.D. Ala. July 25, 2025).

[6] The body of the Second Amended Complaint is forty-one pages. The Second Amended Complaint, in its entirety, is comprised of the body of the complaint and thirty exhibits, including

Defendants, Defendants Gaskin and Roberson ("the SBI[7] Defendants"), and Defendants Ruiz, Snyder, Clark, Payne, Dixon, Jones, Tucker, and Dabney ("the New MPD[8] Defendants"). (Doc. No. 74.) Plaintiffs' motion for leave to amend and their Second Amended Complaint were untimely filed because the deadline to amend the pleadings, which had already been extended on two occasions, expired on March 17, 2025.[9] (*See* Doc. No. 61, 70.) Nevertheless, on March 25, 2025, the Court granted Plaintiffs leave to amend and deemed the Second Amended Complaint timely filed. (Docs. No. 77, 78.)

The Original Defendants failed to timely answer or otherwise respond to the Second Amended Complaint. On May 7, 2025, because the Original Defendants had not yet answered the Second Amended Complaint, Plaintiffs filed an application for entry of default. (Doc. No. 94.) On May 20, 2025, the Clerk of Court entered default against the Original Defendants. (Doc. No. 108.) On May 21, 2025, the Original Defendants moved the Court to set aside the entry of default. (Doc. No. 117.)

---

several thumb drives. Plaintiffs filed most of the exhibits under seal. "A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

[7] The SBI Defendants were employed with the Alabama State Bureau of Investigation ("SBI").

[8] The New MPD Defendants are MPD police officers.

[9] The Court's July 25, 2025 Memorandum Opinion provides a more detailed overview of the parties' respective failures to meet pleading-related deadlines in association with the filing of the Second Amended Complaint. (Doc. No 163.) *Moncrief*, 2025 WL 2098345, at **1–4. The Court will not repeat those details here, but the July 25, 2025 Memorandum Opinion points out that, despite multiple deadline extensions, Plaintiffs and the Original Defendants all failed at numerous junctures to follow proper procedure and meet applicable deadlines for filing their pleadings.

On June 11, 2025, the Original Defendants and New MPD Defendants jointly filed a partial motion to dismiss, [10] and the Original Defendants and Defendants Dixon, Jones, and Payne filed answers to the Second Amended Complaint. (Doc. No. 135.) On June 26, 2025, Plaintiffs timely filed a response. (Doc. No. 148.) On July 10, 2025, and the New MPD and Original Defendants timely filed a reply. (Doc. No. 156.)

On July 24, 2025, the Court held a hearing on the motion to set aside entry of default. (Doc. No. 162.) In its July 25, 2025 Memorandum Opinion and Order, the Court granted the motion to set aside entry of default and deemed the Original Defendants' answers and partial motion to dismiss timely filed. (Docs. No. 163, 164.) *Moncrief*, 2025 WL 2098345.

The partial motion to dismiss filed by the Original Defendants and the New MPD Defendants (Doc. No. 135) is ripe for disposition.

---

[10] On June 11, 2025, the following documents were also filed. The Original Defendants and Defendants Dixon, Jones, and Payne filed answers to the Second Amended Complaint. (Docs. No. 136–141.) The SBI Defendants filed a partial motion to dismiss the Second Amended Complaint. (Doc. No. 134.) By separate Memorandum Opinion and Order entered November 10, 2025, the Court granted the SBI Defendants' Motion to Dismiss and dismissed them from this action. (Docs. No. 173, 174.)

## IV.    FACTS[11]

The May 18, 2021 shooting incident was the culmination of a five-day ordeal that began with a police chase of a speeding red Dodge Challenger at 10:00 p.m. on Friday, May 14, 2021. (Doc. No. 74 at 9–10; Doc. No. 74-9.) MPD officers followed the vehicle at a distance due to its high rate of speed. (Doc. No. 74 at 9–10; Doc. No. 74-9.) When they caught up to the vehicle, they found it abandoned, and the driver had fled. From the Challenger, they recovered a set of car keys, miscellaneous personal items, and a traffic citation issued to Gary Moncrief. (Doc. No. 74 at 9–10; Doc. No. 74-9.) They also recovered "a firearm and a large amount of illegal narcotics," specifically "19 Molly pills and a black 9mm Taurus Millenium G2 handgun." (Doc. No. 74 at 9–10, 18; Doc. No. 74-9.) Though the vehicle was registered to Gary Moncrief and Geraldine Barber, [12] the

---

[11] The facts here are drawn from the allegations in Plaintiffs' Second Amended Complaint which, for purposes of considering the motion to dismiss, are taken as true and construed in the light most favorable to Plaintiffs. *See Resnick*, 693 F.3d 1321–22. At this stage of litigation, those allegations have not been proven. To the extent factual allegations in the complaint about a particular exhibit conflict with the contents of the exhibit itself, the court treats the contents of the exhibit as controlling. *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016).

The Court omits discussion of facts not directly relevant to the instant motion to dismiss. In the November 10, 2025 Memorandum Opinion, the Court set forth the facts pertinent to the claims against the SBI Defendants. (Doc. No. 173.) Additionally, the Court will not recount irrelevant facts concerning Defendants Ruiz, Snyder, Clark, Payne, Dixon, Jones, Tucker, and Dabney. Plaintiffs' sole claim against those Defendants is found in Count IV, a claim pursuant to 42 U.S.C. § 1985 alleging conspiracy to fabricate and tamper with evidence. As explained in this Memorandum Opinion, Plaintiffs' Second Amended Complaint does not include any specific factual allegations that reasonably support the conclusion any Defendants conspired to fabricate or tamper with evidence. Moreover, for reasons stated in this Memorandum Opinion, it is undisputed that Plaintiffs' § 1985 equal protection claim is not viable as a matter of law.

[12] The Second Amended Complaint confusingly references both "Geraldine Barber" and "GF Barber." Taking the allegations of the Second Amended Complaint together with exhibits not filed under seal, it is possible to determine an individual named Geraldine D. Barber is the same person as both Geraldine Barber and GF Barber. (Doc. No. 74 at 9 n. 8; Doc. No. 74-5.) It is unclear why the Second Amended Complaint refers to the individual as "GF Barber" without using correct

officers suspected Gary Moncrief was the driver of the vehicle. (Doc. No. 74 at 9 n. 8; Doc. No. 74-4 at 3; Doc. No. 74-5.)

On May 17, 2021, Defendant Clark interviewed Geraldine Barber's mother and son.[13] (Doc. No. 74 at 5.) The same day, Geraldine Barber called MPD to report the Challenger stolen and spoke to Defendant Snyder. (Doc. No. 74 at 10; Doc. No. 74-9.) She identified Gary Moncrief as her ex-boyfriend. (Doc. No. 74-9.) Upon Defendant Snyder's questioning, she admitted her car was not stolen, indicated she was not surprised to learn the police located "a large amount of narcotics and a handgun inside the vehicle," and stated she "did not want to get into trouble for Gary." (Doc. No. 74 at 10; Doc. No. 74-9.) Defendant Snyder asked Geraldine Barber to go to MPD for an interview. (Doc. No. 74 at 10; Doc. No. 74-9.) The call ended with Geraldine Barber saying she would call Defendant Snyder back. (Doc. No. 74 at 10; Doc. No. 74-9.)

On Tuesday, May 18, 2021,[14] at about 6:35 a.m., using her son's phone, Geraldine Barber called MPD from her mother's home and reported Gary Moncrief had physically assaulted her the previous night. (Doc. No. 74 at 10–13; Doc. No. 74-10; Doc. No. 74-11.) Three MPD officers responded to the call. (Doc. No. 74 at 11.)

---

initials, but at other times refers to Geraldine Barber by her first and last name. For consistency, the Court refers to the individual as Geraldine Barber.

[13] The Second Amended Complaint does not indicate what time Defendant Clark conducted the interview. (Doc. No. 74 at 5.)

[14] The Second Amended Complaint states the call was placed at 6:35 a.m. on May 17, 2021, but the call service log indicates the call occurred at 6:35 a.m. on May 18, 2021. (Doc. No. 74 at 10–13; Doc. No. 74-10.)

At about 8:35 a.m., Defendant Ruiz arrived at the home of Geraldine Barber's mother in response to reports of shots being fired inside the home and the possible kidnapping of Geraldine Barber. (Doc. No. 74 at 10–13; Doc. No. 74-9; Doc. No. 74-10; Doc. No. 74-11.) Defendant Snyder, who heard about the possible kidnapping over dispatch, told the MPD officers on the scene the information she had gathered over the past few days about Gary Moncrief and Geraldine Barber.[15] (Doc. No. 74-9.)

At 11:17 a.m., Defendant Clark took statements from Geraldine Barber's mother and son. (Doc. No. 74 at 10–13; Doc. No. 74-11.) At 11:45 a.m., based on witness statements, Defendant Clark secured warrants for Gary Moncrief for kidnapping in the first degree, reckless endangerment, and violation of the Family Protection Act. (Doc. No. 74 at 10–13; Doc. No. 74-11.)

At 4:24 p.m., MPD officers canvassed the inside of the home of the mother of Geraldine Barber and found no shell casings or bullet holes. (Doc. No. 74 at 10–13; Doc. No. 74-11.) At 5:14 p.m., an MPD officer reported that, according to Geraldine Barber's son, Gary Moncrief had a silver firearm in his possession. (Doc. No. 74 at 10–13; Doc. No. 74-11.) The MPD officer also relayed a statement from Geraldine Barber's father. Specifically, her father stated that, after Gary Moncrief and Geraldine Barber arrived at the

---

[15] Upon hearing over dispatch Geraldine Barber may have been taken by force from her mother's home, Defendant Snyder immediately contacted the patrol unit on the scene and advised them "of the incidents that had occurred over the last few days." (Doc. No. 74-9.) Defendant Snyder attempted unsuccessfully to call Geraldine Barber at the telephone number she had provided. (*Id.*) Defendant Snyder verified the phone number, informed the Domestic Violence Unit about "this incident," offered her assistance, and had no further involvement in the investigation from that point. (*Id.*; Doc. No. 74 at 12.)

home that morning, he heard a verbal altercation between the two of them followed by a gunshot in the bathroom. (Doc. No. 74-11.)

At approximately 6:30 p.m., Gary Moncrief and Geraldine Barber arrived and parked at the Microtel Inn[16] in Montgomery. (Doc. No. 74 at 13–14.) They entered the hotel lobby and calmly approached the front desk area, where Geraldine Barber rented a room with her credit card. (Doc. No. 74 at 13–14; Doc. No. 74-16; Doc. No. 74-18; Doc. No. 74-20.) She departed the Microtel Inn shortly before 7:00 p.m, leaving Gary Moncrief behind. (Doc. No. 74 at 13–14; Doc. No. 74-16; Doc. No. 74-18; Doc. No. 74-20.)

At 7:00 p.m., Defendant Clark found information on Facebook consisting of a live post showing Geraldine Barber had returned home safely. (Doc. No. 74 at 10–13; Doc. No. 74-11.) At 7:10 p.m., Defendant Clark relayed to Defendant Payne the information regarding the live Facebook post. (Doc. No. 74 at 10–13; Doc. No. 74-11.)

At approximately 7:30 p.m., Defendant Jones arrived at the Microtel Inn and showed the desk clerk a warrant and a picture of Gary Moncrief. (Doc. No. 74 at 14; Doc. No. 74-19.) Defendant Jones stated the police were looking for Gary Moncrief and Geraldine Barber. (*Id.*) The clerk verified Geraldine Barber had rented a room and identified Gary Moncrief as the room's occupant. (*Id.*) Defendant Jones asked the clerk to watch the camera for him and tell him if anyone left the room. (*Id.*) The hotel manager subsequently received a telephone call from a person named "Benita," who requested her call be transferred to the hotel room in which Gary Moncrief was staying. (Doc. No. 74-

---

[16] The Second Amended Complaint refers to hotel as the "Microtel Hotel." (Doc. No. 74 at 8.) The name of the hotel is the "Microtel Inn." (Docs. No. 74-18, 74-20.)

20.) The hotel owner transferred the call, which was answered by a man. (*Id.*) Shortly after 8:00 p.m., the clerk contacted Defendant Jones to tell him cameras showed Gary Moncrief was leaving his room and getting on the elevator.[17] (Doc. No. 74 at 15–16, Doc. No. 74-19; Doc. No. 74-20.)

Between 8:15 and 8:16 p.m., a vehicle arrived at the Microtel Inn and parked near the lobby entrance. (Doc. No. 74 at 15–17.) Plaintiff Benita Moncrief was driving, Plaintiff Tamara Acree was in the front passenger seat, and Plaintiff Janice Moncrief was in the back seat. (*Id.*) At 8:16 p.m., Gary Moncrief exited the front door of the Microtel Inn and entered the rear driver's side passenger seat of the vehicle just as an unmarked MPD black Chevy Tahoe stopped abruptly behind the vehicle, blocking it in. (*Id.*)

At 8:16:53 p.m., Defendant Albrecht exited the passenger seat of the Tahoe holding a rifle. (*Id.*) At the same time, Defendant Brown and Plaintiff Benita Moncrief opened their car doors. (*Id.*) At 8:16:54 p.m., Defendant Brown, the driver, exited the Tahoe and fired at Plaintiffs' vehicle, and Benita Moncrief exited her vehicle with her hands up. (*Id.*)

---

[17] Meanwhile, at 8:03 p.m. Defendant Clark took a voluntary recorded statement from Geraldine Barber describing the events leading up to, during, and immediately after the alleged kidnapping. (Doc. No. 74 at 14.) She completed her statement after the shooting incident was over. (*Id.*; Doc. No. 74–11 (noting Geraldine Barber's recorded statement ended "at 2035 hours").) Although Geraldine Barber's statement is materially consistent with the facts stated here and provides additional details regarding the events of May 18, 2021, the Court does not rely on that statement because its details were not known to the officers on the scene at the time of the shooting. Therefore, any additional facts contained in Geraldine Barber's statement are not relevant to Plaintiffs' claims in Counts II, III, VII, and IX, which concern the actions of the officers on the scene at, and immediately after, the time of the shooting. Neither are the additional details Geraldine Barber provided relevant to Count IV of the Second Amended Complaint, which alleges all Defendants conspired to tamper with evidence to make it appear Defendants Brown and Albrecht had acted reasonably in firing on the vehicle. Moreover, Plaintiffs do not rely on Geraldine Barber's recorded statement in the body of the Second Amended Complaint.

Defendant Albrecht fired twice.[18] (*Id*.) At the exact same second (8:16:54 p.m.), Gary Moncrief slumped over to his right, and Plaintiff Benita Moncrief ran toward the hotel. (*Id*.)

Immediately thereafter, in an unmarked Ford Taurus, Defendants Payne, Dixon, and Jones pulled behind the Tahoe and parked. Defendants Payne, Dixon, and Jones exited the Taurus and drew their firearms. (*Id*.) The MPD officers then removed Plaintiffs Janice Moncrief and Tamara Acree from the vehicle and handcuffed and separated them. (*Id*.)

A subsequent investigation by Defendants Roberson and Gaskin revealed a Taurus 9mm handgun had been recovered from Gary Moncrief at the scene of the shooting. (Doc. No. 74 at 18–22.) A coroner's report indicated Gary Moncrief died of a self-inflicted gunshot wound inside his mouth that completely severed his brainstem. (*Id*.) Gary Moncrief had also suffered an "indeterminate range graze wound" to the head which could have caused death, but may also have been survivable. (*Id*.)

## V.    DISCUSSION[19]

### A.    Count II

---

[18] The Second Amended Complaint states, "[Defendant Albrecht] shoots twice while backing up. At this point, [Defendant Albrecht] is shooting into the vehicle's passenger side where [Plaintiff Janice Moncrief] and [Plaintiff Tamara Acree] [are] seated." (Doc. No. 74 at 16.) As worded, the statement creates ambiguity about whether Defendant Albrecht fired only twice into the passenger side of Plaintiffs' vehicle, or whether he fired twice while backing up and then fired additional rounds into the passenger side of Plaintiffs' vehicle.. The number of times Defendant Albrecht fired his weapon is immaterial to the resolution of the partial motion to dismiss.

[19] Count I is a claim against Defendants Brown and Albrecht pursuant to 42 U.S.C. § 1983 for unlawful use of excessive force. (Doc. No. 74 at 22–24.) Count V is a wrongful death claim against Defendant City. (*Id*. at 30–31.) Counts VI and VIII are state law claims for negligence, assault, and battery against Defendants Brown and Albrecht. (*Id*. at 31–34.) The Court includes no discussion of Counts I, V, VI, and VIII because Defendants did not move for dismissal of those counts. (*See* Doc. No. 135 at 13.)

Count II is a claim against Defendants Payne, Dixon, and Jones pursuant to 42 U.S.C. § 1983 for unlawful use of excessive force when "shooting at close range into the vehicle [Plaintiffs] occupied, using deadly force without warning, and failing to attempt an alternative to lethal force." (Doc. No. 74 at 24–26.) On March 18, 2025, nearly four years after the shooting incident, Plaintiffs filed their Second Amended Complaint naming Defendants Payne, Dixon, and Jones as Defendants for the first time in this lawsuit. (Doc. No. 74.) Defendants Payne, Dixon, and Jones argue Count II is therefore barred by the two-year statute of limitations. (Doc. No. 135 at 3–6.) *See Taylor v. City of Mobile Police Dep't*, No. 24-11888, 2024 WL 4624660, at *4 (11th Cir. Oct. 30, 2024) ("[T]he two-year limitations period in Ala. Code § 6-2-38(l) applies to § 1983 actions filed in Alabama." (citing *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1482 (11th Cir. 1989))). Plaintiffs respond that Count II is nevertheless timely because the statute of limitations did not begin to run until December 29, 2024, when they first learned through discovery the identities of Defendants Payne, Dixon, and Jones. (Doc. No. 148 at 8–10.)

Although Alabama law provides the two-year statute of limitations for Count II, "[f]ederal law determines when a federal civil rights claim accrues." *Rozar v. Mullis*, 85 F.3d 556, 561 (11th Cir. 1996). As Plaintiffs point out, under federal law, the statute of limitations does not begin to run on a § 1983 claim until "the facts that would support a claim are apparent or should be apparent to a person of reasonably prudent regard for her rights." *Taylor*, 2024 WL 4624660, at *4; *see also Rozar*, 85 F.3d at 561–62. "Plaintiffs must know or have reason to know that they were injured, and must be aware or should be aware of who inflicted the injury." *Rozar*, 85 F.3d at 562; *see also Taylor*, 2024 WL

4624660, at *4. "This rule requires a court first to identify [Plaintiffs'] alleged injuries, and then to determine when [P]laintiffs could have sued for them." *Rozar*, 85 F.3d at 562. Here, under Count II, Plaintiffs seek to recover for injuries sustained from MPD officers "shooting at close range into the vehicle that they occupied, using deadly force without warning, and failing to attempt an alternative to lethal force." (Doc. No. 74 at 24–26.) The question for the Court, then, is when, with due diligence, did Plaintiffs first learn they "could have sued" Defendants Payne, Dixon, and Jones for those injuries. *Rozar*, 85 F.3d at 562.

The facts alleged in the Second Amended Complaint leave no doubt all Plaintiffs were present during the shooting incident and, prior to filing this action, would or should have been aware five MPD officers pointed their guns at them. (Doc. No. 74 at 24–26.) Plaintiffs also would have been aware two of those officers (subsequently discovered to be Defendants Brown and Albrecht) used deadly force by firing at the vehicle. (*Id.*; Doc. No. 148 at 9.) Plaintiffs allege the SBI file merely revealed the names of the remaining three MPD officers involved in the incident. Nowhere do they allege they discovered in the SBI file information indicating <u>any</u> officers other than Defendants Brown or Albrecht used excessive force by "shooting at close range into the vehicle [Plaintiffs] occupied, using deadly force without warning, [or] failing to attempt an alternative to lethal force." [20] (Doc.

---

[20] Indeed, as Defendants point out, nowhere in the Second Amended Complaint do Plaintiffs include any specific factual allegations that Officers Payne, Dixon, or Jones fired a single shot or otherwise used deadly force. Plaintiffs also allege no specific facts indicating Defendants Payne, Dixon, or Jones missed an opportunity to avert the use of lethal force. However, Defendants did not move for dismissal of Count II on grounds that Plaintiffs failed to allege sufficient facts to support it.

No. 74 at 24–26.) Plaintiffs have not established that discovery of the mere identities of Defendants Payne, Dixon, and Jones had anything to do with discovering "who inflicted the injury" alleged in Count II. *Rozar*, 85 F.3d at 562. Put another way, Plaintiffs have not demonstrated the SBI file made "*the facts that would support [Count II]* . . . apparent . . . to a person of reasonably prudent regard for her rights." *Taylor*, 2024 WL 4624660 (emphasis added). Hence, Plaintiffs have failed to show December 29, 2024, was the date they discovered their Count II § 1983 claim against Defendants Payne, Dixon, or Jones.

Plaintiffs also failed to show they could not, with reasonable diligence, have asserted their Count II claim against Defendants Payne, Dixon, or Jones when they filed their original complaint.[21] At the time they filed their original complaint, Plaintiffs had hotel surveillance video footage showing five police officers were at the shooting scene with guns drawn and aimed at Plaintiffs' vehicle.[22] (Doc. No. 1 at 6–8.). Additionally, all Plaintiffs were eyewitnesses to the number of officers on the scene. (Doc. No. 74 at 24–26.) Nevertheless, in the original complaint, which Plaintiffs filed one day before the

---

[21] Plaintiffs do not argue their claims against Defendants Payne, Dixon, and Jones relate back to the filing of their initial Complaint, which they filed one day before the expiration of the statute of limitations.

[22] Plaintiffs acknowledge "[t]he Microtel surveillance footage attached to the [Second Amended C]omplaint (sic) shows that all five of the MPD officers were on the scene within seconds, and all five of the officers aimed their weapons at the Plaintiffs' vehicle. All five officers were acting in concert in their attempts to arrest Plaintiff Gary Moncrief." (Doc. No. 148 at 9.) A review of the record indicates the referenced "Microtel surveillance footage" is the same hotel footage referenced in the original complaint. Though Plaintiffs comment that the MPD officers were acting "in concert" when they attempted the arrest, they do not argue the conduct of Defendants Brown and Albrecht is attributable to Defendants Payne, Dixon, or Jones. Nor do the facts alleged in the Second Amended Complaint suggest that Officers Payne, Dixon, or Jones, who arrived on the scene immediately after the shooting, participated in the use of deadly force or failed to prevent Defendants Albrecht or Brown from doing so.

statute of limitations expired, they named as fictitious[23] Defendants only two MPD police officers: MPD Officer One and MPD Officer Two. (Doc. No. 1 at 1.) MPD Officers One and Two were the two officers in the Tahoe[24] who first pulled behind Plaintiffs' vehicle, blocked it in, exited with guns drawn, and fired at the vehicle. (Doc. No. 1.) In wording identical to the language used in Count II[25] of the Second Amended Complaint, Plaintiffs alleged MPD Officers One and Two "employed an unlawfully excessive force when committing such horrendous actions against the Plaintiffs, including, but not limited to, shooting at close range into the vehicle that they occupied, using deadly force without warning, and failing to attempt an alternative to the use of deadly force." (Doc. No. 1 at 9.) Plaintiffs then requested and were given leave to conduct limited discovery to identify MPD Officers One and Two. (Docs. No. 7, 28.) *Moncrief*, 2023 WL 5444654. In conjunction with that limited discovery, they identified MPD Officers One and Two as Defendants Brown and Albrecht and named them in the First Amended Complaint. (Doc. No. 29.)

---

[23] Generally, fictitious-party pleading is not allowed in federal court. *Est. of W. v. Smith*, 9 F.4th 1361, 1368 (11th Cir. 2021). Yet, a limited exception exists "when a plaintiff provides a clear description of the defendant sued that makes the person identifiable but the plaintiff needs discovery in order to determine the defendant's name." *Coleman v. Williams*, No. 2:21-cv-320-MHT, 2024 WL 4003519, at *1 (M.D. Ala. Aug. 30, 2024).

[24] While the First Amended Complaint does not refer to a Tahoe, that is the vehicle they were driving. (*See, e.g.*, Doc. No. 148 at 9 (referring to MPD Officers One and Two as "the two officers from the unmarked Tahoe").)

[25] In Count VI of the Second Amended Complaint, Plaintiffs restated the same § 1983 excessive force claim against Defendants Brown and Albrecht, using the same language there as well. (Doc. No. 74 at 31–32.)

Plaintiffs' successful efforts in timely naming Defendants Brown and Albrecht as Defendants underscores the fact that, with due diligence, they could have done likewise with Defendants Payne, Dixon, and Jones. They did not. Thus, Plaintiffs failed to show they could not, within the two years following the shooting incident, have sued all five MPD officers for "shooting at close range into the vehicle [Plaintiffs] occupied, using deadly force without warning, and failing to attempt an alternative to the use of deadly force." (Doc. No. 1 at 9; Doc. No. 74 at 24, 32.) Accordingly, Count II is due to be dismissed with prejudice as barred by the statute of limitations.[26] *See Otero v. Newrez LLC*, No. 21-12990, 2022 WL 3155414, at *2 (11th Cir. Aug. 8, 2022) ("[D]ismissals based on the statute of limitations are decisions on the merits that are with prejudice.").

B.    Count III

In Count III of the Second Amended Complaint, Plaintiffs allege a claim of unlawful use of excessive force against Defendant City. (Doc. No. 74 at 26–28.) Defendant City argues Count III restates Count II of the First Amended Complaint, which, according to Defendant City, the Court previously dismissed. (Doc. No. 135 at 7–8 (citing Doc. No. 42 at 10–15).) However, the Court neither considered nor granted dismissal of Count II of the First Amended Complaint with respect to Defendant City because Defendant City did not

---

[26] The Court is not implying failure to fictitiously name a defendant who can be so named in an initial complaint *per se* constitutes a lack of due diligence. As noted in this Memorandum Opinion, there are limited circumstances in which Defendants not named in a complaint (fictitiously or otherwise) may be added as Defendants more than two years after the incident giving rise to the § 1983 claim. *See Rozar*, 85 F.3d at 561–62. Here, Plaintiffs did not expressly or fictitiously name Defendants Payne, Dixon, or Jones in a complaint filed within the two-year statute of limitations. Neither have Plaintiffs demonstrated their claims fall within the limited circumstances that would have entitled them to name Defendants Payne, Dixon, or Jones as Defendants at some later date.

move for dismissal of that count. (*See* Doc. No. 42 at 10 n.10 ("Defendants do not argue that Count II is due to be dismissed [from the First Amended Complaint] to the extent that it is asserted against the City."); Doc. No. 42 at 23 & n.16 (dismissing Count II of the First Amended Complaint "only against Defendant Finley in his individual capacity for unlawful use of excessive force in violation of § 1983" and noting: "Defendants did not move for dismissal of the § 1983 claim against the City for unlawful use of excessive force, which is alleged in Count II. That claim remains pending.").) *Moncrief*, 2024 WL 4142655, at *5 n.10, *6 n.16. In its reply brief, Defendant City withdraws its argument for dismissal of Count III of the Second Amended Complaint, electing to seek dismissal of Count III in a motion for summary judgment at a later date. (Doc. No. 156 at 1.) Accordingly, the partial motion to dismiss is due to be denied as to Count III of the Second Amended Complaint.

C.    Count IV

In Count IV, Plaintiffs assert a conspiracy claim pursuant to 42 U.S.C. § 1985 against Defendants City, Albrecht, Brown, Ruiz, Snyder, Clark, Payne, Dixon, Jones, Tucker, and Dabney.[27] Specifically, Plaintiffs allege that, in concert with one another, all Defendants knowingly deprived Plaintiffs of their constitutional rights by conspiring "to falsify evidence and/or to break the chain of custody of evidence to give the appearance that Pl. GARY MONCRIEF committed suicide and thereby was reasonable for Defendant BROWN and Defendant ALBRECHT's actions." (*Id*. at 28 (sic).) It appears Plaintiffs intend to allege Defendants conspired to falsify evidence or break the chain of custody of

---

[27] Plaintiffs also included the SBI Defendants in Count IV. By separate Memorandum Opinion and Order entered on November 10, 2025, the Court dismissed Count IV against the SBI Defendants. (Docs. No. 173, 174.)

evidence to make it appear Defendants Brown and Albrecht acted reasonably when they fired on the vehicle in which Gary Moncrief was a passenger.[28]

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter," that, if "accepted as true," would "'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556)). As Defendants point out, Plaintiffs' Second Amended Complaint provides only conclusory allegations and insinuations—not specific facts—to support their claim Defendants conspired to falsify evidence or break the chain of custody. Glaringly absent from the Second Amended Complaint are specific facts from which it can be reasonably inferred anyone, either alone or in conspiracy, tampered with or fabricated any evidence, much less evidence to show Defendants Brown and Albrecht acted reasonably in firing their weapons. *See Twombly*, 550 U.S. at 559 (holding that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions" (citations, quotation marks, and alterations omitted)); *Armbrester v. Corizon, LLC*, No. 2:20-CV-77-WHA-JTA, 2021 WL 2346111, at *1 (M.D. Ala. May 14, 2021) ("As a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss." (citing *South Fla. Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 408 n.10 (11th Cir. 1996))), *report and recommendation adopted*, No. 2:20-CV-77-WHA-JTA, 2021 WL 2336950 (M.D. Ala. June 8, 2021). A plaintiff must provide

---

[28] Plaintiffs' Second Amended Complaint is not a model of clarity. The Court's interpretation of Plaintiffs' allegations is confirmed by the statements Plaintiffs' attorney made in open court during a scheduling and status conference held on July 24, 2025. (*See* Doc. No. 162.)

"more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

Moreover, as Defendants point out,[29] as a matter of law, § 1985 does not apply to Plaintiffs' conspiracy claim because Plaintiffs provide no allegations any Defendant acted with intent to discriminate on the basis of race or some other class-based distinction.[30] *Byrd v. Clark*, 783 F.2d 1002, 1007–08 (11th Cir. 1986) ("The language of [§] 1985 which requires an intent to deprive one of equal protection or equal privileges and immunities means that there must be some racial or otherwise class-based invidiously discriminatory animus behind the conspirators' action." (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). Perhaps for that reason, in response to Defendants' motion, Plaintiffs abandon

---

[29] In a separately-filed partial motion to dismiss, the SBI Defendants argued Plaintiffs' § 1985 conspiracy claim is not viable because Plaintiffs fail to allege any facts indicating Defendants conspired with discriminatory intent. (Doc. No. 134.) In their partial motion to dismiss, Defendants City, Albrecht, Brown, Ruiz, Snyder, Clark, Payne, Dixon, Jones, Tucker, and Dabney make the same argument, albeit with less detail. "In the interest of brevity," they adopted the SBI Defendants' more detailed argument on that point. (Doc. No. 135 at 11.)

[30] Some portions of § 1985, which are not relevant here, do not require proof of discriminatory intent because they do not pertain to conspiracies to deprive persons of the equal protection of the laws. *Kush v. Rutledge*, 460 U.S. 719, 726 (1983). Here, Plaintiffs appear to allege a § 1985 equal protection violation, most likely pursuant to the second clause of § 1985(2), which does require proof of discriminatory intent. *Id*. at 725. In relevant part, § 1985(2) states:

> [I]f two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(2)–(3).

§ 1985 and argue exclusively that they have a viable claim for conspiracy under 42 U.S.C.
§ 1983.

The problem with Plaintiffs' § 1983 argument is that the Second Amended
Complaint contains no § 1983 claim.[31] Plaintiffs cannot amend their Second Amended
Complaint by way of their response brief. *McIntosh v. Ragland*, No. 2:23-cv-470-RAH-
JTA, 2024 WL 2946092, at *4 (M.D. Ala. June 11, 2024) (noting a plaintiff cannot amend
a complaint through a response to a motion to dismiss (collecting cases)), *report and
recommendation adopted*, No. 2:23-cv-470-RAH-JTA, 2024 WL 3339604 (M.D. Ala. July
9, 2024); *see also Burgess v. Religious Tech. Ctr., Inc*., 600 F. App'x 657, 665 (11th Cir.
2015) ("We repeatedly have held that plaintiffs cannot amend their complaint through a
response to a motion to dismiss.") (citing *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th
Cir. 2009)). Hence, Plaintiffs' attempts to convert their § 1985 claim to a § 1983 claim
fails.

---

[31] On June 26, 2025, after the time allotted in the Uniform Scheduling Order for amendment of
pleadings, after all Defendants filed motions to dismiss the Second Amended Complaint, and in
an apparent effort to circumvent Rule 15(a) of the Federal Rules of Civil Procedure and the terms
of the Uniform Scheduling Order, Plaintiffs attempted to amend their complaint by filing a "Notice
of Correction of Second Amended Complaint." (Doc. No. 146.) They attached to their "Notice of
Correction" an amended version of their Second Amended Complaint, which replaced the § 1985
claim with a § 1983 claim. (Doc. No. 146-1.)  By way of explanation for the "correction," Plaintiffs
admitted they have no viable § 1985 claim and indicated they amend had intended to file a § 1983 claim
instead. Specifically, they stated: "Plaintiffs, after several edits, inadvertently left two references
to § 1985 in their Second Amended Complaint. . . . While Plaintiffs considered a conspiracy claim
under both §§ 1983 and 1985, in the end, Plaintiffs felt they only had evidence to support a
conspiracy claim under § 1983." (Doc. No. 146 at 2.) To enforce the terms of the Uniform
Scheduling Order and compliance with the Federal Rules of Civil Procedure, the Court construed
the "Notice of Correction of Second Amended Complaint" as a Rule 15(a) motion to amend and
denied the motion as untimely. (Doc. No. 150.) Thus, Plaintiffs are bound to their allegations in
the Second Amended Complaint, which does not include a § 1983 claim.

Accordingly, Plaintiffs' § 1985 claim against Defendants City, Albrecht, Brown, Ruiz, Snyder, Clark, Payne, Dixon, Jones, Tucker, and Dabney is due to be dismissed with prejudice for failure to state a claim upon which relief can be granted. Further, because the § 1985 claim is the only claim against Defendants Ruiz, Snyder, Clark, Tucker, and Dabney, those Defendants are due to be dismissed from this action.

D.    Count VII

Count VII is a state law negligence claim against Defendants Payne, Dixon, and Jones for "committing such horrendous actions[32] against the Plaintiffs, including, but not limited to, calling SWAT to execute a warrant despite having the opportunity to nonviolently arrest" Gary Moncrief.[33] (Doc. No. 74 at 32–33.) Count VII is governed by Alabama's two-year statute of limitations. Ala. Code. 1975 § 6-2-38(a), (l). Defendants argue Count VII is due to be dismissed as untimely because Plaintiffs first asserted it in the Second Amended Complaint, almost four years after the shooting incident. Plaintiffs contend Count VII is nonetheless timely pursuant to Ala. Code 1975 § 6-2-3, which states:

> In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action.

---

[32] Count VII does not specifically identify any "horrendous action" Defendants Payne, Dixon, and Jones negligently committed other than purportedly calling a SWAT team to execute a warrant.

[33] Nowhere in their statement of facts do Plaintiffs allege with any specificity that Defendants Payne, Dixon, or Jones called a SWAT team to arrest Gary Moncrief or that a SWAT Team ever arrived in response to such a call. However, Defendants did not move to dismiss Count VII for failure to allege sufficient factual matter to support the claim.

Plaintiffs do not argue Count VII "seek[s] relief on the ground of fraud." Ala. Code 1975 § 6-2-3. Instead, they cite *Williamson v. Williamson*, No. 2:12-cv-01841-MHH, 2013 WL 12121985, at *5 (N.D. Ala. Nov. 4, 2013), for the proposition the statute of limitations did not begin to run on Count VII until December 29, 2024, when they received the SBI file and purportedly discovered the existence of their Count VII claim. The flaw in Plaintiffs' argument is their misreading of *Williamson* and the Alabama cases upon which it relies. *Williamson* does not hold § 6-2-3 always tolls the running of the statute of limitations until a plaintiff discovers the existence of a negligence cause of action. Rather, *Williamson* expressly recognizes that, under Alabama law, § 6-2-3's discovery rule applies in two circumstances: in actions sounding in fraud, and in non-fraud tort cases involving the defendant's fraudulent concealment of the facts constituting the tort. *Williamson*, 2013 WL 12121985 at *5 (citing *Utilities Bd. of City of Opp v. Shuler Bros., Inc.*, 2013 WL 3154011, *4 (Ala. June 21, 2013); *DGB, LLC v. Hinds*, 55 So. 3d 218, 226 (Ala. 2010)); *see also Opp*, 138 So. 3d at 293 ("The 'discovery rule' in Alabama applies only to fraud actions, *see* § 6–2–3, Ala. Code 1975, and cases involving the fraudulent concealment of the existence of a cause of action.").

In responding to the partial motion to dismiss, Plaintiffs provide only a conclusory allegation they "were precluded from discovering the facts surrounding their injury due to the fraudulent concealment of the officers who participated . . . ." (Doc. No. 148 at 15.) In their response, they provide no information or argument regarding the origin of Defendants' alleged duty to disclose the SBI report or the names of all five officers involved in the shooting incident. Neither do they explain when or how Defendants

allegedly breached such a duty. Nor, within the four corners of the Second Amended Complaint, do Plaintiffs allege Defendants fraudulently concealed the existence of their negligence claim. *See DGB, LLC v. Hinds*, 55 So. 3d 218, 226 (Ala. 2010) (holding that, "to show that a plaintiff's claims fall within the savings clause of § 6–2–3 a complaint must allege the time and circumstances of the discovery of the cause of action," "the facts or circumstances by which the defendants concealed the cause of action or injury[,] and what prevented the plaintiff from discovering the facts surrounding the injury"). In short, Plaintiffs have not met their burden to show Count VII falls within § 6-2-3's discovery rule. *See McKenzie v. Janssen Biotech, Inc.*, 295 So. 3d 617, 623 (Ala. 2019) (noting the party claiming the benefit of § 6-2-3 must demonstrate its applicability). Accordingly, Count VII is due to be dismissed with prejudice on grounds the statute of limitations has run. *Otero*, 2022 WL 3155414, at *2.

E.    Count IX

Count IX is a state law claim against Defendants Payne, Dixon, and Jones for assault. (Doc. No. 74 at 35–36.) Specifically, Plaintiffs allege Defendants Payne, Dixon, and Jones assaulted Plaintiffs Janice Moncrief, Tamara Acree, and Gary Moncrief "when they aggressively yelled commands to the Plaintiffs under threat of physical injury." (*Id.* at 35.) As Defendants point out, at most, the only factual allegations pertinent to Count IX are that Defendants Payne, Dixon, and Jones exited their vehicle, drew their guns, and

assisted with arresting Janice Moncrief and Tamara Acree.[34] Defendants Payne, Dixon, and Jones argue Alabama state law entitles them to immunity from Count IX.[35]

Section 6-5-338(a), Ala. Code 1975, states Alabama peace officers "shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of [their] conduct in performance of any discretionary function within the line and scope of [their] law enforcement duties." Further, under *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000), as modified in *Hollis v. City of Brighton*, 950 So. 2d 300 (Ala. 2006), peace officers are entitled to immunity for acting in the exercise of "judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons." *Hollis*, 950 So. 2d at 309. However, *Cranman* provides exceptions to immunity when (1) the Constitution or laws of the United States or of Alabama provide otherwise or (2) the defendant police officer "acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *Id*. (citations and internal quotation marks omitted). Once a peace officer establishes entitlement to State-agent immunity, the burden shifts to

---

[34] Defendants are generous in describing the underlying facts. The Second Amended Complaint specifically alleges only that Defendants Payne, Dixon, and Jones "pulled their guns" on Plaintiffs Janice Moncrief, Tamara Acree, and Gary Moncrief. (Doc. No. 74 at 17.) Plaintiffs provide no specific factual allegations regarding when, how, why, or what Defendants Payne, Dixon, and Jones yelled at Plaintiffs. (*Id*.) In fact, the statement of facts in the Second Amended Complaint does not state they yelled anything or threatened Plaintiffs at all. (*Id*.) Neither, in the Second Amended Complaint, do Plaintiffs specifically identify the officers who removed Plaintiffs Janice Moncrief and Tamara Acree and separated and handcuffed them. (*Id*. (alleging only that, "[s]oon after" Defendants Payne, Dixon, and Jones arrived and pulled their guns, Plaintiffs Janice Moncrief and Tamara Acree "was (sic) removed from the vehicle, handcuffed, and separated").)

[35] Defendants do not argue Count IX is due to be dismissed as untimely.

the plaintiff to show the applicability of an exception to that immunity under *Cranman*. *Ex parte City of Homewood*, 231 So. 3d 1082, 1087 (Ala. 2017).

Here, Defendants Payne, Dixon, and Jones were exercising judgment in performing their law-enforcement duties as police officers, including attempting an arrest immediately after a shooting. Any yelled threats would have occurred in the exercise of their judgment and discretion while carrying out those duties. [36] Accordingly, Defendants Payne, Dixon, and Jones have made their *prima facie* case of entitlement to State-agent immunity. *Homewood*, 231 So. 3d at 1087 ("[F]or [the defendant officers] to demonstrate that they are entitled to immunity from [the plaintiff's] claims against them in their official and individual capacities, they must establish (1) that they were peace officers (2) performing law-enforcement duties at the time of the accident and (3) exercising judgment and discretion.").

The burden, therefore, shifts to Plaintiffs to demonstrate the applicability of a *Cranman* exception, but they make no effort to do so. *See id*. Nor do they argue Defendants Payne, Dixon, and Jones failed to meet their *prima facie* burden. Instead, Plaintiffs point to Alabama cases holding that, to overcome a motion to dismiss for failure to state a claim

---

[36] In accordance with the facts alleged in the Second Amended Complaint, the only opportunity for Defendants Dixon, Payne, or Jones to have yelled threats would have been in the moments immediately after the shooting as MPD officers secured the occupants of Plaintiffs' vehicle. The Second Amended Complaint alleges that, immediately after the shooting, Defendants Dixon, Payne, and Jones pulled up in a Ford Taurus behind the Chevy Tahoe, got out of their vehicle, and "pulled their guns" on Plaintiffs Gary Moncrief, Janice Moncrief, and Tamara Acree. (Doc. No. 74 at 17.) "Soon after," Plaintiffs Janice Moncrief and Tamara Acree "w[ere] removed from the vehicle, handcuffed, and separated" by officers not identified in the Second Amended Complaint. (*Id*.) Plaintiffs provide no allegations of any further actions taken by Defendants Dixon, Payne, or Jones on May 18, 2021.

upon which relief could be granted, the complaint need not plead a *Cranman* exception with specificity. *Avendano v. Shaw*, 371 So. 3d 278, 285 (Ala. 2022). Rather, under Alabama law, a Rule 12(b)(6)[37] dismissal is appropriate "only if it were obvious from the face of the complaint" that a *Cranman* exception <u>does not</u> apply. *Id*. Drawing very generous inferences in Plaintiffs' favor, Count IX alleges at most that, immediately on the heels of the shooting, as MPD officers secured the occupants of Plaintiffs' vehicle, Defendants Payne, Dixon, and Jones "aggressively yelled commands to the Plaintiffs under threat of physical injury." (Doc. No. 74 at 35.) Such allegations, without more, are in no way out of the ordinary for the situation, much less indicative of tortious assault carried out willfully, maliciously, fraudulently, in bad faith, or beyond their authority. *See Hollis*, 950 So. 2d at 309 (listing the *Cranman* exceptions).[38] Hence, on their face, Plaintiffs' factual allegations establish *Cranman's* exceptions are inapplicable to Count IX. Plaintiffs point to nothing within the Second Amended Complaint that could lend itself to any other possibility. Neither do they argue additional facts exist that could justify a *Cranman* exception. Therefore, on grounds of State-agent immunity, Count IX is due to be dismissed with prejudice for failure to state a claim upon which relief can be granted. Further, because no other claims remain against Defendants Payne, Dixon, and Jones, they are entitled to be dismissed from this action.

---

[37] *Avenando* applied Rule 12(b)(6) of the Alabama Rules of Civil Procedure.

[38] Neither party suggests that federal or Alabama law precludes the applicability of state agent immunity to Count IX. *See Hollis*, 950 So. 2d at 309 (listing the *Cranman* exceptions).

## VI.    CONCLUSION

Accordingly, the partial motion to dismiss (Doc. No. 135) is due to be granted as to Counts II, IV, VII, and IX, which are due to be dismissed with prejudice. The motion is due to be denied as to Count III. Further, Defendants Ruiz, Snyder, Clark, Payne, Dixon, Jones, Tucker, and Dabney are due to be dismissed from this action.

A separate order will be entered.

DONE this 21st day of November, 2025.

_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE