IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JANICE MONCRIEF, as Administratrix of the Estate of Gary Moncrief, deceased, and in her individual capacity, BENITA MONCRIEF, and TAMARA ACREE,<br><br>  Plaintiffs,<br><br>v.<br><br>CITY OF MONTGOMERY, a municipal corporation of the State of Alabama, CHRISTOPHER BROWN, in his individual capacity as a Police Officer of the City of Montgomery Police Department, and JAMES ALBRECHT in his individual capacity as a Police Officer of the City of Montgomery Police Department,<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   CASE NO. 2:23-cv-331-JTA<br>)   (WO)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION AND ORDER**

Before the Court are the following motions: Plaintiffs' Second Renewed and Amended Motion for Leave to File Conventionally (Doc. No. 188), Plaintiffs' Renewed and Amended Motion for Leave to File Under Seal (Doc. No. 189), Plaintiffs' Motion to Reconsider (Doc. No. 190), and Plaintiffs' Motion for Leave to File Third Amended Complaint (Doc. No. 191). For the reasons stated below, the motions are due to be denied.

I.   **PROCEDURAL HISTORY**

This case arises out of a May 18, 2021 incident in which Defendants Christopher Brown and James Albrecht, police officers for the City of Montgomery, used deadly force

by firing into a vehicle occupied by Plaintiffs. One of the occupants, Gary Moncrief (whose estate is represented in this action by Plaintiff Janice Moncrief), died due to a gunshot wound. (Doc. No. 173 at 3.) According to the Second Amended Complaint, Alabama State Bureau of Investigation ("SBI") officers, Defendants Wayne Gaskin and Jared Roberson, investigated the shooting. (Doc. No. 74 at 18–22.) In a summary of his investigative efforts, Defendant Gaskin stated that, on the date of the incident, he met with Montgomery Police Department Captain Tucker,[1] who was preserving a Taurus handgun as evidence inside his vehicle. (Doc. No. 74 at 19–20; Doc. No. 74-28.) Captain Tucker told Defendant Gaskin the Taurus handgun had been secured from Gary Moncrief. (Doc. No. 74 at 19–20; Doc. No. 74-28.) A coroner's report later indicated Gary Moncrief died of a self-inflicted gunshot wound inside his mouth that completely severed his brainstem. (*Id.*) The coroner reported Gary Moncrief also suffered an "indeterminate range graze wound" to the head which could have caused death, but may also have been survivable. (*Id.*)

The extensive procedural history of this case has been documented in prior opinions and thus will not be recounted here in detail. For purposes of this Memorandum Opinion and Order, the following procedural events and corresponding dates are most relevant:

- On May 17, 2023, Plaintiffs filed this action. (Doc. No. 1.)
- On November 8, 2023, Plaintiffs filed their First Amended Complaint against Defendants City of Montgomery ("City"), Albrecht, and Brown. (Doc. No. 29.)

---

[1] Captain Tucker was formerly a Defendant in this action. The Court dismissed him from this action on November 21, 2025. (Docs. No. 175, 176.)

- On September 10, 2024, the Court granted in part and denied in part Defendants' motion to dismiss Plaintiffs' amended complaint. (Doc. No. 42.)

- On March 18, 2025, Plaintiffs filed a Second Amended Complaint against Defendants City, Albrecht, Brown, Bianka Ruiz, D'Shana Snyder, Laquita Clark, Alix Payne, Jr., Brian Dixon, Edkenjunta[2] Jones, Ralph Tucker, Raynard Dabney, Gaskin and Roberson. (Doc. No. 74.)

- On June 11, 2025, Defendants Gaskin and Roberson filed a Partial Motion to Dismiss Plaintiffs' Second Amended Complaint. (Doc. No. 134.)

- On June 11, 2025, Defendants City, Albrecht, Brown, Ruiz, Snyder, Clark, Payne, Dixon, Jones, Tucker, and Dabney filed a Partial Motion to Dismiss Plaintiffs' Second Amended Complaint. (Doc. No. 135.)

- On July 10, 2025, briefing on the partial motions to dismiss closed. (Doc. No. 152.)

- On July 25, 2025, the Court entered an Amended Scheduling Order. (Doc. No. 166.) In accordance with the Scheduling Order (Doc. No. 49) and Amended Scheduling Order, the pertinent deadlines are as follows:

  o The deadline to file motions to amend the pleadings expired on March 17, 2025. (Docs. No. 49, 61, 70.) However, the Court permitted Plaintiffs to file a Second Amended Complaint on March 18, 2025. (Doc. No. 77.)

---

[2] In their brief in support of the motion for reconsideration, Plaintiffs clarify that, although Defendant Jones was identified as "Ed Jones" prior to his dismissal from this action, his correct name is "Edkenjunta Jones." (Doc. No. 190-1 at 23 n.13.)

3

- o   The deadline for completion of discovery is January 20, 2026. (Doc. No. 166.)
- o   The deadline for dispositive and *Daubert* motions is February 13, 2026. (*Id.*)
- o   The Court will hold a pretrial conference on March 9, 2026, at 1:00 p.m. (*Id.*)
- o   This cause is set for a jury trial during the term of court commencing on April 20, 2026, in Montgomery, Alabama. (Doc. No. 49; Doc. No. 166 at 1 n.1.)
- On November 10, 2025, the Court entered a Memorandum Opinion and Order granting the partial motion to dismiss filed by Defendants Gaskin and Roberson and dismissed them from this action. (Docs. No. 175, 176.)
- On November 21, 2025, the Court entered a Memorandum Opinion and Order granting in part and denying in part the partial motion to dismiss filed by Defendants City, Albrecht, Brown, Ruiz, Snyder, Clark, Payne, Dixon, Jones, Tucker, and Dabney. (Docs. No. 175, 176.)  The Court dismissed Defendants Ruiz, Snyder, Clark, Payne, Dixon, Jones, Tucker, and Dabney from the action. (*Id.*) Some claims remain pending against Defendants City, Albrecht, and Brown. (*Id.*)
- On December 1, 2025, Plaintiffs filed (1) a motion for leave to file under seal a motion for reconsideration of the November 10 and 21, 2025 Memorandum Opinions and Orders; and (2) a motion for leave to file a Third Amended Complaint under seal. (Docs. No. 180, 181.) On December 10, 2025, the Court held a status conference with respect to those motions and denied the motions

without prejudice to refile them after the parties conferred to eliminate unnecessary sealing of a large volume of exhibits. (Docs. No. 182, 183, 184.)

- On December 17, 2025, Plaintiffs filed (1) a renewed and amended motion for leave to file under seal a motion for reconsideration of the November 10 and 21, 2025 Memorandum Opinions and Orders; and (2) a renewed and amended motion for leave to file a Third Amended Complaint under seal. (Docs. No. 185, 186.) On December 19, 2025, the Court denied the motions because Plaintiffs failed to state the grounds upon which they sought to seal the documents. (Doc. No. 187.)

- On December 19, 2025, Plaintiffs filed the following motions:
  - Plaintiffs' Second Renewed and Amended Motion for Leave to File Conventionally. (Doc. No. 188.)
  - Plaintiffs' Renewed and Amended Motion for Leave to File Under Seal. (Doc. No. 189.)
  - Plaintiffs' Motion to Reconsider. (Doc. No. 190.)
  - Plaintiffs' Motion for Leave to File Third Amended Complaint. (Doc. No. 191.)

- On January 5, 2026, on the parties' joint request, the Court referred this action to court-annexed mediation before United States Magistrate Judge Kelly Fitzgerald Pate. (Docs. No. 192, 195.)

- On January 6, 2026, Judge Pate set this case for mediation on January 16, 2026. (Doc. No. 196.)

Upon review of Plaintiffs' Second Renewed and Amended Motion for Leave to File Conventionally (Doc. No. 188), Plaintiffs' Renewed and Amended Motion for Leave to File Under Seal (Doc. No. 189), Plaintiffs' Motion to Reconsider (Doc. No. 190), and Plaintiffs' Motion for Leave to File Third Amended Complaint (Doc. No. 191), the Court concludes further briefing is unnecessary and the motions are ripe for disposition.

## II.    STANDARD OF REVIEW

A.    Motion for Leave to Amend

A district court's discretion to deny leave to amend a complaint is "severely restricted" by Fed. R. Civ. P. 15(a), which stresses that courts should freely give leave to amend "when justice so requires." *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018) (quoting *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988)). The policy of liberally favoring amendment exists to facilitate determination of claims on their merits, rather than allowing litigation to become a survival exercise in the technical points of pleading. *Davis v. Delta Air Lines, Inc.*, No. 18-25361-CIV, 2019 WL 13261027, at *2 (S.D. Fla. May 30, 2019) (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597–98 (5th Cir. November 5, 1981)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.").

Despite Rule 15(a)'s "mandate" that leave to amend is to be freely given when justice requires, leave to amend *may* be denied for such reasons as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman*, 371 U.S. at 182.

B.    Motion for Reconsideration of a Nonfinal Order

Except in limited circumstances[3] not applicable here, Rule 54(b) of the Federal Rules of Civil Procedure provides:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

"[A] district court has broad and 'plenary power' over its interlocutory orders, and 'may therefore reconsider, revise, alter or amend [an interlocutory] order at any time prior to final judgment.'" *Holmes v. Fresenius Kidney Care of Tuskegee*, No. 3:21-cv-578-ECM, 2023 WL 2413993, at *1 (M.D. Ala. Mar. 8, 2023) (quoting *Hardin v. Hayes*, 52 F.3d 934, 938 (11th Cir. 1995) (quotations and citation omitted)). However, "[i]n the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy and is employed sparingly." *Gougler v. Sirius Prods., Inc.*, 370 F. Supp. 2d 1185, 1189 (S.D. Ala. 2005). "[C]ourts and litigants cannot be repeatedly called upon to backtrack through the paths of litigation which are often laced with close questions.

---

[3] Rule 54(b) of the Federal Rules of Civil Procedure also provides that an order "direct[ing] entry of a final judgment as to one or more, but fewer than all, claims or parties," is not a final judgment unless a court expressly determines there is no just reason for delay and directs entry of final judgment as to those claims or parties. Fed. R. Civ. P. 54(b). The undersigned has not expressly directed final judgment as to any claims or parties. Therefore, Plaintiffs' motions are not postjudgment motions.

There is a badge of dependability necessary to advance the case to the next stage." *Sussman v. Salem, Saxon & Nielsen*, 153 F.R.D. 689, 694 (M.D. Fla. 1994) (citing *Kuenz v. Goodyear Tire & Rubber Company*, 617 F. Supp. 11, 14 (N.D. Ohio 1985)); *see also Kelly v. Montgomery Hous. Auth.*, No. 2:24-cv-166-MHT-JTA, 2024 WL 3240637, at *1 (M.D. Ala. June 28, 2024) (noting judicial resources are generally ill-spent on "repetitive motions [seeking] revisitation of prior orders by raising or expanding on previously-rejected arguments," as well as on "[m]otions seeking revisitation of prior orders based on new arguments that could have been raised prior to entry of the challenged order"). Hence, "'[l]itigants should not use motions to reconsider as a knee-jerk reaction to an adverse ruling.'" *Spellman v. Haley*, No. CIV.A. 97-T-640-N, 2004 WL 866837, at *2 (M.D. Ala. Feb. 22, 2002); *see also Armbuster v. Rosenbloom*, No. 1:15-CV-114, 2016 WL 1441467, at *1 (S.D. Ga. Apr. 11, 2016) ("[A] motion for reconsideration is not an appeal, and thus it is improper on a motion for reconsideration to 'ask the Court to rethink what [the Court] ha[s] already thought through — rightly or wrongly.'" (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc*., 99 F.R.D. 99, 101 (E.D. Va. 1983))).

Extraordinary circumstances may warrant revisitation of a nonfinal order only in the event of an intervening change in controlling law, discovery of new evidence, the need to correct a clear error of fact or law, or the need to prevent manifest injustice. *Gougler*, 370 F. Supp. 2d at 1189; *see also Holmes*, 2023 WL 2413993, at *1 (noting the standards governing Rule 59(e) motions to alter or amend judgments often serve as guidelines for deciding motions to reconsider nonfinal orders). "Additional facts and arguments that should have been raised in the first instance are not appropriate grounds for a motion for

reconsideration." *Rossi v. Troy State Univ.*, 330 F. Supp. 2d 1240, 1249 (M.D. Ala. 2002), *aff'd*, 64 F. App'x 743 (11th Cir. 2003). Newly discovered evidence generally will not warrant reconsideration of an order if the evidence could have been submitted prior to the entry of the order in question and the movant fails to show good cause why he or she did not do so. *Gougler*, 370 F. Supp. 2d at 1189 (citing *Rossi*, 330 F. Supp. 2d at 1249); *see also Mays v. U.S. Postal Serv.*, 122 F.3d 43, 46 (11th Cir. 1997) ("[W]here a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent some showing that the evidence was not available during the pendency of the [underlying] motion."). "Nor can motions for reconsideration be used to present new legal theories or to raise legal arguments that could have been raised previously." *Spellman*, 2004 WL 866837, at *2; *Holmes*, 2023 WL 2413993, at *1. Furthermore, "*re*-consideration" on grounds of a change in controlling law "assumes that the argument on which the intervening change in the law bears was actually made in the first instance." *Spellman*, 2004 WL 866837, at *2 (emphasis in original). In short, a motion for reconsideration "cannot be used 'to relitigate old matters, raise [new] argument[s,] or present evidence that could have been raised prior to the entry of judgment.'" *Holmes*, 2023 WL 2413993, at *1 (quoting *Michael Linet, Inc. v. Village of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005)).

### III.    DISCUSSION

A.    Motion for Leave to File Third Amended Complaint (Doc. No. 191)

Plaintiffs seek to amend their complaint to amend their factual allegations and add a new[4] conspiracy claim pursuant to 42 U.S.C. § 1983 against Defendants City, Brown, and Albrecht, and against former Defendants Ruiz, Snyder, Clark, Payne, Dixon, Jones, Tucker, Dabney, Gaskin, and Roberson. Plaintiffs indicate[5] they should be allowed to amend because they would like to continue pursuing outstanding discovery matters with the former Defendants and because "[t]he participation of the former Defendants in the § 1983 civil conspiracy was not known until discovery commenced." (Doc. No. 191 at 14-15.) Plaintiffs also "respectfully ask this Court to reconsider its prior orders dismissing" Defendants Ruiz, Snyder, Clark, Payne, Dixon, Jones, Tucker, Dabney, Gaskin, and Roberson[6] "to permit the Plaintiffs to amend its [sic] pleading to conform with existing § 1983 civil conspiracy law." (Doc. No. 191 at 15.)

Plaintiffs contend that, "due to ongoing extensive discovery after the filing of Plaintiffs' Second Amended complaint and the close of submissions related to Defendants' Motion to Dismiss (sic), Plaintiffs have uncovered new evidence that tends to show that Gary Moncrief did not commit suicide." (*Id*. at 15.) Plaintiffs do not specifically identify what "new evidence" warrants another opportunity to amend or when that evidence was

---

[4] Plaintiffs' Second Amended Complaint contained a claim for conspiracy pursuant to 42 U.S.C. § 1985. (Doc. No. 74 at 28.) The Court dismissed that conspiracy claim on grounds the conspiracy claim was not cognizable under § 1985 and for failure to allege sufficient facts to plausibly show Defendants engaged in a conspiracy. (*See* Doc. No 173 at 5–9; Doc. No. 175 at 17–21.)

[5] Plaintiffs' argument is not a model of clarity.

[6] Plaintiffs' argument for reconsideration is subsumed in Section III.B. of this Memorandum Opinion, which addresses Plaintiffs' separate motion for reconsideration. (Doc. No. 190.)

10

discovered.[7] Yet, the undersigned notes the Second Amended Complaint (Doc. No. 74) was filed on March 18, 2025, and briefing on the partial motions to dismiss the Second Amended Complaint (Docs. No. 134, 135) closed July 10, 2025. (*See* Docs. No. 152, 156.) Only now, on the eve of the close of discovery, after receiving an adverse ruling on the partial motions to dismiss the Second Amended Complaint, do Plaintiffs formally seek leave to file a thirty-six page amended complaint with thirty-one exhibits[8] to add a § 1983 claim for civil conspiracy against thirteen defendants and cure pleading deficiencies discussed in the adverse ruling.

Plaintiffs' motion for leave to amend is due to be denied as untimely and because Plaintiffs did not show good cause for extending the Scheduling Order's expired amendment deadline. Fed. R. Civ. 16(b)(4) ("A [scheduling order] may be modified only for good cause and with the judge's consent.").

Alternatively, the motion is due to be denied on grounds of undue prejudice and delay. *Foman*, 371 U.S. at 182. This action was filed on May 17, 2023. (Doc. No. 1.) It is nearly three years old. The case has already been delayed by a late-filed amendment to the

---

[7] In their Motion for Leave to File a Third Amended Complaint (Doc. No. 191), Plaintiffs provide a timeline of discovery events (primarily depositions), including discovery that occurred after the filing of the Second Amended Complaint and after the close of briefing on the partial motions to dismiss. Still, they do not state what new information they uncovered in any of that discovery. Nor do they explain which deposition or other evidence first evinced their need to amend the complaint to include allegations that Gary Moncrief did not commit suicide. Thus, Plaintiffs have not provided any basis for a finding of good cause for extending the deadline for amending the complaint at this late date based on newly discovered evidence.

[8] The exhibits, which include documents, audio files, and video files, are extensive. At least some portion of them were also attached to the Second Amended Complaint, although the Court has not undertaken a comparison to determine how many of the exhibits are new.

11

pleadings, which in turn necessitated extensions of deadlines and the entry of an amended scheduling order on July 25, 2025.[9] (Doc. No. 166.) The parties have also been afforded numerous other extensions of time.[10] Discovery commenced in December 2024.[11] The deadline to file motions for leave to amend the pleadings, which was extended on several occasions, expired on March 17, 2025. (Doc. No. 70.) Prior to the expiration of the deadline to seek leave to amend the pleadings, Plaintiffs knew they wished to assert a § 1983 civil conspiracy claim, but they did not allege a § 1983 claim in the Second Amended Complaint. (Doc. No. 146 at 2 (Plaintiffs' statement that they had intended to include a § 1983 claim in the Second Amended Complaint); *see also* Doc. No. 173 at 8–9 & n.16 (discussing Plaintiffs' two attempts to assert a § 1983 conspiracy claim without filing a motion for leave to amend, both of which the Court rejected).) The January 20, 2026 discovery deadline is fast approaching. The dispositive motions deadline is only a little over two months away, and the final pretrial conference is just over six weeks away. The trial date is looming. Allowing amendment at this juncture to add a new conspiracy claim against thirteen defendants would further delay trial and necessitate further extensions of

---

[9] On July 24, 2025, the Court held an on-the-record status and scheduling conference and oral argument to address scheduling matters, the parties' then-pending joint motion to amend the scheduling order, and a pending motion to set aside entry of default. (Docs. No. 117, 157, 162.) At that proceeding, the Court impressed upon the parties the need to ensure the efficient resolution of this action. The Court also noted that, as of the date of the July 24, 2025 proceeding, which is two years after Plaintiffs filed the original complaint, Plaintiffs had attempted five times to amend the complaint.

[10] The Court will not provide a detailed list of extended deadlines. The docket speaks for itself.

[11] Early discovery was allowed in 2023, after which Plaintiffs filed an amended complaint in November 2023. (Docs. No. 28, 29.)

discovery and other deadlines. Plaintiffs have made no attempt to justify the delay, burdens, or prejudice inherent in allowing amendment at this time.

Accordingly, the motion for leave to amend will be denied. This action must move forward.

B.     Motion for Reconsideration (Doc. No. 190)

Plaintiffs seek reconsideration of this Court's November 10 and 21, 2025 Memorandum Opinions and Orders (Docs. No. 173–176) on the partial motions to dismiss the Second Amended Complaint. (Doc. No. 191.) Plaintiffs seek reconsideration "to permit this Court to entertain a Motion for Leave to File a Third Amended Complaint." (*Id.* at 1.) Plaintiffs also argue they are "presenting newly available evidence," in support of the motion, "and altering or amending the judgment will correct clear error or prevent manifest injustice." (*Id.* at 2.)

As discussed in Section III.A. of this Memorandum Opinion and Order, the motion for leave to amend is due to be denied as untimely and to prevent undue prejudice and delay. Therefore, Plaintiffs' desire to file a Third Amended Complaint does not warrant reconsideration of the Court's prior orders on the partial motions to dismiss the Second Amended Complaint.

The Court also finds no merit in Plaintiffs' argument that newly discovered evidence warrants reconsideration of the previous rulings on the partial motions to dismiss the Second Amended Complaint. Plaintiffs contend that, since the filing of the Second Amended Complaint, discovery revealed evidence that Gary Moncrief did not have a gun at the scene of the police-involved shooting and, thus, could not have died by a self-

13

inflicted bullet wound as the coroner's report concluded. Specifically, Plaintiffs allege they discovered evidence in the following categories: (1) evidence showing the Taurus handgun with which Gary Moncrief allegedly shot himself was not at the scene of the police-involved shooting;[12] (2) evidence showing that, during the shooting, Gary Moncrief was not in possession of the Taurus handgun and was unarmed;[13] (3) evidence showing someone planted the Taurus handgun at the scene of the police shooting;[14] (4) evidence

---

[12] In support of their argument that newly discovered evidence shows the Taurus handgun with which Gary Moncrief allegedly shot himself was not at the scene, Plaintiffs cite evidence obtained in June 2025 showing the Taurus handgun in question was black. (Doc. No. 190-1 at 20–21.) They also cite Defendant Albrecht's October 30, 2025, deposition testimony that he saw a silver and black Taurus handgun on the floorboard of Plaintiffs' vehicle immediately after the shooting, though he "c[ould]n't remember" the gun's color "exactly." (*Id.*)

[13] In support of their argument that newly discovered evidence shows Gary Moncrief was unarmed during the police shooting, Plaintiffs cite depositions taken September 30, 2025, October 2, 2025, October 30, 2025, and November 5, 2025. (Doc. No. 190-1 at 21–23.) That deposition testimony consists of testimony from the five officers on the scene stating either that they did not see the gun on the scene, did not see Gary Moncrief in possession of a gun, did not see Gary Moncrief fire a gun, or were "not at an angle to see Gary Moncrief shoot." (*Id.*)

[14] In support of their argument that newly discovered evidence shows the Taurus handgun was planted at the scene, Plaintiffs contend new evidence indicates "[t]he chain of custody related to the Taurus handgun . . . is unreliable at best and fabricated at worst." (Doc. No. 190-1 at 23.) Specifically, they cite information from the SBI investigatory file they obtained prior to filing the Second Amended Complaint, and they also reference body camera footage and other evidence without stating when they first received the footage or evidence in discovery. In addition, they rely on testimony from depositions held September 5, 2025, September 10, 2025, September 18, 2025, September 30, 2025, and October 2, 2025. (Doc. No. 190-1 at 23–28, 31.) They also cite deposition testimony from November 12, 2025, and November 17, 2025, as well as a gun trace report on the Taurus that was presumably obtained after November 20, 2025. (*Id.* at 29–32, 34.) However, Plaintiffs provide no explanation why evidence acquired after November 12, 2025, provided the first clue they needed to amend their pleadings or present new arguments in response to the partial motions to dismiss. Nor do they indicate why the more extensive evidence obtained prior to the issuance of the November 10 and November 21, 2025 Memorandum Opinions and Orders provided no indication they needed to bring new evidence to the Court's attention sooner than they did. (Docs. No. 173–75.)

showing Gary Moncrief did not fire a weapon during the shooting incident;[15] and (5) evidence indicating "other investigative issues" regarding a shell casing allegedly recovered from the scene of a crime involving Gary Moncrief several days prior to the police-involved shooting.[16]

Other than possibly cumulative evidence, it appears the "newly discovered evidence" as to all five of the previous categories was collected prior to the issuance of the November 10 and November 21, 2025 Memorandum Opinions and Orders from which Plaintiffs seek relief. (Docs. No. 173–75.) Further, as Plaintiffs point out, had Gary Moncrief possessed a gun, turned it on himself, or fired it, he would have done so "in the back seat of his aunt [Plaintiff] Benita Moncrief's vehicle," which she was driving, "next to his mother[, Plaintiff] Janice Moncrief, and in front of his mother's friend[, Plaintiff] Tamara Acree," who was in the front passenger seat. (Doc. No. 190-1 at 16.) It stretches credulity to suggest Plaintiffs could not have relied at any time on their own recollection of whether they saw the gun at the scene as grounds for amendment[17] or reconsideration,

---

[15] In support of their argument that new evidence showed Gary Moncrief did not fire a weapon during the shooting incident, Plaintiffs cite a May 2021 death report and a June 2022 investigatory report by the Montgomery Office of City Investigations. (Doc. No. 190-1 at 38–39.) Plaintiffs did not state when they first received those reports in discovery.

[16] In support of their argument that new evidence of "other investigatory issues" justifies reconsideration, Plaintiffs cite testimony from depositions taken on September 10, 2025, September 30, 2025, and October 10, 2025. (Doc. No. 190-1 at 36.)

[17] Indeed, it stretches credulity to suggest that, until Plaintiffs obtained the officers' testimony that the officers did not see a gun at the scene, Plaintiffs could not have relied on their own recollection to include in any of their previous pleadings good-faith based allegations that Gary Moncrief had no gun. After all, Plaintiffs state they "have maintained from the time of the [shooting incident] that Gary Moncrief did not commit suicide in the back seat of" his aunt's car in the presence of all three Plaintiffs. (Doc. No. 190-1 at 16.)

but instead had to wait until they obtained other evidence shedding doubt on whether Gary Moncrief had a gun, such as evidence regarding the chain of custody or deposition testimony that <u>the officers at the scene</u> did not see Gary Moncrief with a gun.

Because the newly discovered evidence could have been presented prior to the issuance of the November 10 and 21, 2025 Memorandum Opinions and Orders,[18] it is incumbent upon Plaintiffs to establish good cause for not timely bringing that evidence to the Court's attention, but they have not done so in their motion. *See Rossi*, 330 F. Supp. 2d at 1250 ("[T]he court finds that the motion to reconsider on the basis of newly submitted evidence is due to be denied because the Plaintiff failed to submit the evidence prior to the court's Memorandum Opinion and failed to show good cause why he could not have done so."). Though Plaintiffs appear[19] to argue they had good cause for not basing allegations in the Second Amended Complaint on the newly discovered evidence, Plaintiffs have not demonstrated (or even argued) good cause for failing to bring forth the alleged newly

---

[18] As to the few items of evidence obtained after the entry of the Memorandum Opinions and Orders from which Plaintiffs seek relief, Plaintiffs have failed to show such evidence is anything more than cumulative or that it served as their first notice that they needed to amend their complaint or further brief the partial motions to dismiss.

[19] The motion for reconsideration is not a model of clarity. Plaintiffs also may be arguing they obtained the newly discovered evidence after Defendants moved to dismiss the Second Amended Complaint or after briefing closed on the motions. Yet, newly discovered evidence would not have been relevant to the merits of a motion to dismiss, which was limited to considering the allegations of the Second Amended Complaint. At no time during the pendency of the partial motions to dismiss the Second Amended Complaint did Plaintiffs seek to obviate the motions by moving to amend their complaint on the basis of newly discovered evidence, nor did they request leave to file supplemental briefs. Only after receiving unfavorable rulings do they now seek to adjust their pleadings in response to those rulings. In any event, the critical question is whether Plaintiffs had good cause not to present the newly discovered evidence <u>prior to those unfavorable rulings</u>. *Rossi*, 330 F. Supp. 2d at 1250.

discovered evidence <u>prior to the issuance of the Memorandum Opinions and Orders for which Plaintiffs seek reconsideration</u>. Hence, the motion for reconsideration is due to be denied. *See Mays*, 122 F.3d at 46 (11th Cir. 1997) (holding a "court should not grant" a motion to reconsider on the basis of newly discovered evidence "absent some showing that the evidence was not available during the pendency of the [underlying] motion").

C.  Plaintiffs' Second Renewed and Amended Motion for Leave to File Conventionally (Doc. No. 188); Plaintiffs' Renewed and Amended Motion for Leave to File Under Seal (Doc. No. 189)

In Plaintiffs' Second Renewed and Amended Motion for Leave to File Conventionally, Plaintiffs seek leave "to file under seal a redacted version[20] of Plaintiffs' Brief in Support of Plaintiffs' Motion to Reconsider, and redacted or sealed versions of Plaintiffs' Exhibits in Support of Plaintiffs' Motion to Reconsider." (Doc. No. 188.) In Plaintiffs' Renewed and Amended Motion for Leave to File Under Seal, Plaintiffs seek leave to file under seal their motion for leave to file a Third Amended Complaint, or some

---

[20] Plaintiffs' continued requests to file redacted copies of documents under seal are befuddling. There is generally no need to seal a redacted document. Redactions facilitate maintenance of a public record of all nonprotected information, with the redactions shielding only confidential or otherwise protected information from public view. With limited exceptions (such as where redactions only remove irrelevant personally identifying information), unredacted copies of publicly filed redacted documents are usually simultaneously filed under seal to preserve the unredacted version in the record. *See* Fed. R. Civ. P. 5.2(a),(d),(f). This allows the Court to independently review the propriety of shielding the redacted information from public view. It also enables judicial consideration of sealed material relevant to dispositive issues in the case, and, where appropriate, motions to unseal information that may later be filed by a party or an interested third party. *See* Fed. R. Civ. P. 5.2(d); *see generally Pettaway v. Barber*, 645 F. Supp. 3d 1269 (M.D. Ala. 2022) (considering the common law right of access to judicial records in the context of a motion to unseal police body camera footage that previously had been filed under seal pursuant to a protective order).

exhibits thereto.[21] (Doc. No. 189.) The motions for leave to file are due to be denied as moot because the motion for leave to amend the complaint and motion for reconsideration are due to be denied.

## IV. CONCLUSION

Accordingly, it is ORDERED as follows:

1. Plaintiffs' Second Renewed and Amended Motion for Leave to File Conventionally (Doc. No. 188) is DENIED.

2. Plaintiffs' Renewed and Amended Motion for Leave to File Under Seal (Doc. No. 189) is DENIED.

3. Plaintiffs' Motion to Reconsider (Doc. No. 190) is DENIED.

4. Plaintiffs' Motion for Leave to File Third Amended Complaint (Doc. No. 191) is DENIED.

**The Court has ruled. Further motions for reconsideration of motions or matters addressed in this Memorandum Opinion and Order, however denominated, will be summarily denied. This case must move forward.**

DONE this 14th day of January, 2026.

_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE

---

[21] In their motion, Plaintiffs state they "respectfully move this Court for the entry of an Order granting Plaintiffs the right to file under seal Plaintiffs' Motion for Leave to File Third Amended Complaint," but the rest of the motion suggests Plaintiffs only seek to file certain exhibits to the proposed Third Amended Complaint in redacted form or under seal. (Doc. No. 189.)