IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JANICE MONCRIEF, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:23-cv-331-JTA |
| | ) | (WO) |
| CITY OF MONTGOMERY, a municipal | ) | |
| corporation of the State of Alabama, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the motion for summary judgment filed by Defendants City of

Montgomery ("the City"), James Albrecht, and Christopher Brown. (Doc. No. 202.) For

the reasons stated below, the motion for summary judgment is due to be granted, and

Plaintiffs' claims are due to be dismissed with prejudice. Also before the Court are other

pending motions, which are due to be denied as moot. (Docs. No. 240, 243, 244.)

## I.    JURISDICTION

The Court exercises jurisdiction over this action based on federal question

jurisdiction. 28 U.S.C. § 1331. Plaintiffs' claims arise under 42 U.S.C. § 1983 and the

Fourth and Fourteenth Amendments to the United States Constitution. The Court exercises

supplemental jurisdiction over Plaintiffs' state law claims. 28 U.S.C. § 1367(a).

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hitt v. CSX Transportation, Inc.*, 116 F.4th 1309, 1315 (11th Cir. 2024) (citation modified). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-324. A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson*, 477 U.S. at 255.

After the nonmoving party has responded to the motion for summary judgment, the

court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). As stated in *Celotex*, if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial," the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322.

## III.    PROCEDURAL HISTORY

This case arises from a May 18, 2021 incident in which Montgomery Police Department ("MPD") Officers Christopher Brown and James Albrecht allegedly used deadly force by firing into a vehicle occupied by four individuals. In the incident, one of the vehicle's occupants, Gary Moncrief ("Moncrief"), died from a gunshot wound. On May 17, 2023, the other three occupants—Plaintiff Janice Moncrief, who sues in her individual capacity and in her representative capacity as Moncrief's mother and next of kin, along with Plaintiffs Benita Moncrief and Tamara Acree—filed this suit against the City and Officers Albrecht and Brown.[1] (Doc. No. 1.) The extensive procedural history of this case has been documented in prior opinions. (*See* Doc. No. 163 at 2–9; Doc. No. 175 at 3–5, Doc. No. 197 at 1–6.)[2] The Court will not recount it again in detail. For purposes of this

---

[1] Plaintiffs originally filed suit against Officers Albrecht and Brown under fictitious names. (Doc. No. 1.) The Court allowed a limited discovery period for Plaintiffs to discover the two officers' names. (Doc. No. 28.) *Moncrief v. City of Montgomery*, No. 2:23-cv-331-JTA, 2023 WL 5444654 (M.D. Ala. Aug. 23, 2023). After that discovery period, Plaintiffs filed their First Amended Complaint identifying Officers Albrecht and Brown by name. (Doc. No. 29.) Plaintiffs also named former MPD Chief Ernest Finley as a defendant, but the Court dismissed Defendant Finley by an order entered on September 10, 2024. (Doc. No. 42.) *Moncrief v. City of Montgomery*, No. 2:23-cv-331-JTA, 2024 WL 4142655 (M.D. Ala. Sept. 10, 2024).

[2] *See Moncrief v. City of Montgomery*, No. 2:23-cv-331-JTA, 2026 WL 937933 (M.D. Ala. Apr. 7, 2026); *Moncrief v. City of Montgomery*, No. 2:23-cv-331-JTA, 2026 WL 103181 (M.D. Ala.

Memorandum Opinion and Order, the following procedural events and corresponding dates are most relevant.

Plaintiffs filed this action on May 17, 2023. (Doc. No. 1.) The operative complaint is Plaintiffs' March 28, 2025 second amended complaint against the City and Officers Albrecht and Brown.[3] (Docs. No. 74, 173–176.) Following the disposition of the motions to dismiss the second amended complaint (Docs. No. 134–135, 173–176), the following claims remain:

- Count I: a Fourth Amendment § 1983 excessive force claim against Officers Albrecht and Brown;

- Count III: a Fourth Amendment § 1983 excessive force claim against the City;

- Count V: a state law wrongful death claim;[4]

- Count VI: a state law negligence claim against Officers Albrecht and Brown; and

- Count VIII: a state law assault and battery claim against Officers Albrecht and Brown.

(Doc. No. 176.)

---

Jan. 14, 2026); *Moncrief v. City of Montgomery*, No. 2:23-cv-331-JTA, 2025 WL 3689150 (M.D. Ala. Dec. 19, 2025); *Moncrief v. City of Montgomery*, No. 2:23-cv-331-JTA, 2025 WL 3252645 (M.D. Ala. Nov. 21, 2025); *Moncrief v. City of Montgomery*, No. 2:23-cv-331-JTA, 2025 WL 3143037 (M.D. Ala. Nov. 10, 2025); *Moncrief v. City of Montgomery*, No. 2:23-cv-331-JTA, 2024 WL 4142655 (M.D. Ala. Sept. 10, 2024); *Moncrief v. City of Montgomery*, No. 2:23-cv-331-JTA, 2025 WL 2098345 (M.D. Ala. July 25, 2025).

[3] The second amended complaint also named other defendants whom the Court has since dismissed. (Docs. No. 74, 173–176.)

[4] Count V is styled as a claim against the City, but seeks damages against Officers Albrecht and Brown. (Doc. No. 74 at 30–31.) Accordingly, out of an abundance of caution, all Defendants move for summary judgment on Count V. (Doc. No. 203 at 20.)

On February 13, 2026, Defendants filed a motion for summary judgment on all remaining claims. (Doc. No. 202.) Plaintiffs timely filed a response,[5] and Defendants filed a reply. (Docs. No. 208, 217.)

The motion for summary judgment is ripe for disposition.

## IV.    STATEMENT OF FACTS[6]

In the morning of May 18, 2021, MPD received a report Moncrief had kidnapped Geraldine Barber around 6:30 a.m. after the two engaged in a verbal and physical altercation. (Doc. No. 209-5; Doc. No. 202-3 at 8; Doc. No. 202-5 at 5–8, 13–14; Doc. No. 202-7 at 5.) According to witnesses, Moncrief threatened Barber's family with a gun, fired the gun during the altercation, walked Barber to her vehicle with his gun to her back, placed her in the passenger seat at gunpoint, and was still armed[7] when he sped from the scene with Barber in her vehicle. (*See, e.g.*, Doc. No. 202-5 at 5–8, 13–14; Doc. No. 209-5; Doc. No. 209-6; Doc. No. 209-7; Doc. No. 209-8; Doc. No. 209-9; Doc. No. 209-10.) MPD officers spent the day investigating the case and searching for Moncrief and Barber. (*See, e.g.*, Doc. No. 202-4; Doc. No. 202-5.)

By 3:35 p.m., based on witness statements, Detective Lequita Clark secured warrants against Moncrief for first degree kidnapping in violation of Ala. Code 1975

---

[5] Plaintiffs did not timely file all their evidence in support of their response. Instead, without leave, they filed some evidence a day late, and some three days late. (Docs. No. 50, 206, 209–210.)

[6] Where evidence conflicts, the facts are set forth here in the light most favorable to Plaintiffs as the nonmoving parties. *See Sears v. Roberts*, 922 F.3d 1199, 1209 (11th Cir. 2019).

[7] Witnesses reported Moncrief kidnapped Barber from her mother's house. According to Barber's mother, Moncrief arrived at her house with a silver handgun in his pants pocket. (Doc. No. 209-8 at 4.)

§ 13A-6-43(a)(5), third degree domestic violence (reckless endangerment) in violation of Ala. Code 1975 §§ 13A-6-132 and 13A-6-24, and violation of the Domestic Violence Protection Order Enforcement Act, Ala. Code 1975 §§ 13A-6-140 to -143. (Doc. No. 202-5 at 5–8, 13–14, 18, 24.) Thereafter, Detective Clark issued a be-on-the-lookout ("BOLO") notice for Moncrief and Barber. (Doc. No. 202-5 at 10.)

In the afternoon of May 18, 2021, MPD received information regarding the location of a cell phone associated with Moncrief or Barber. (Doc. No. 202-4 at 3–4.) Officers Alix Payne, Jr., Brian Dixon, and Edkenjunta Jones rode together in Officer Payne's vehicle to search for Barber's vehicle. (*Id*.) Sometime that evening,[8] the three officers learned Barber had paid for a room for Moncrief at the Microtel Inn in Montgomery, left him there, and departed for her mother's home. (*Id.* at 4–5; Doc. No. 202-6 at 3.)

Officers Payne, Dixon, and Jones then drove to the Microtel Inn and contacted a SWAT team to "respond to the hotel and . . . get [Moncrief] in custody." (Doc. No. 202-4 at 5–6; Doc. No. 202-8 at 5.) After the three officers arrived at the hotel, Officer Jones went inside, informed the hotel manager the police were looking for Moncrief, and showed the hotel manager Moncrief's photograph. (Doc. No. 202-4 at 5.) The hotel manager provided Officer Jones a key to Moncrief's room, and Officer Jones returned to Officer Payne's vehicle. (*Id*. at 5–6.) The three officers then continued to formulate plans with the SWAT team "so [they] could go and get Moncrief out of the room." (Doc. No. 202-4 at 6; Doc.

---

[8] The record is unclear as to precisely what time Officers Payne, Dixon, and Jones learned Barber had returned to her mother's home after leaving Moncrief at the Microtel Inn. (*See* Doc. No. 202-4 at 4; Doc. No. 209-6 at 4; Doc. No. 211-1 at 30, 243.)

6

No. 202-9 at 4–5.)

Shortly before 8:20 p.m., the officers noticed a black vehicle ("Plaintiffs' vehicle") proceeding slowly from the gas station adjacent to the hotel, into the hotel parking lot, and past Officer Payne's vehicle. (Doc. No. 75 Exhibit X-3; Doc. No. 202-4 at 6–7; Doc. No. 202-6 at 4–5; Doc. No. 202-9 at 4; Doc. No. 211-1 at 101; Doc. No. 212 Exhibit R at 0:00–0:58.) Concluding Plaintiffs' vehicle was operating suspiciously, Officer Payne "told SWAT, 'Hey, look: You-all might want to go ahead and try to get on out here. . . . They got a vehicle circling. They're probably trying to come pick Moncrief up." (Doc. No. 202-4 at 7.) Plaintiffs' vehicle continued circling the hotel parking lot, then parked near the hotel entrance. (Doc. No. 202-4 at 7.)

Shortly thereafter, the SWAT Officers – Officers Albrecht and Brown – arrived, and Officer Payne advised them Moncrief might be exiting the building soon.[9] (Doc. No. 202-9 at 5.) Moments later, Moncrief[10] exited the hotel, entered Plaintiffs' vehicle, and sat down in the back seat behind the driver. (Doc. No. 202-4 at 8; Doc. No. 202-9 at 5.) As he entered Plaintiffs' vehicle, the SWAT officers pulled behind it in an unmarked Chevrolet Tahoe, blocking it in. (Doc. No. 202-4 at 8.)

Immediately thereafter, Benita Moncrief opened the driver's side door and began to exit Plaintiffs' vehicle. A shot was fired, followed quickly by two more as Benita Moncrief

---

[9] The hotel desk clerk had called the officers to inform them Moncrief was leaving his room. (Doc. No. 202-6 at 6–7.)

[10] Officer Albrecht recognized Moncrief based on a picture from the BOLO. (Doc. No. 202-9 at 5.)

ran from the vehicle with her hands up. (Doc. No. 202-4 at 8.) Hearing the shots, Officers Payne, Dixon and Brown rushed to the SWAT officers. (Doc. No. 202-4 at 8–9.) After the shooting stopped, with guns still drawn, the officers ordered everyone out of Plaintiffs' car and secured the surviving occupants. (Doc. No. 202-4 at 9.) In the process, the officers found Moncrief slumped against Janice Moncrief, bleeding from the mouth. (Doc. No. 202-4 at 9.) Officer Brown removed Moncrief from the vehicle, and the officers could see blood and brain matter coming from the back of Moncrief's head. (Doc. No. 202-4 at 9; Doc. No. 202-6 at 9.) The officers attempted to render aid and called for emergency medical assistance. (Doc. No. 202-4 at 10; Doc. No. 202-6 at 9; Doc. No. 202-8 at 8.)

In body-camera footage of the moment officers began to remove Moncrief from Plaintiffs' vehicle after the shooting, Officer Albrecht can be heard telling other officers he "saw the bullet come through the window and [he] fired back." (Doc. No. 212 Exhibit V at 2:02.) Officer Albrecht looked into the open car door next to Moncrief and alerted the other officers to a gun on the floorboard in front of Moncrief.[11] (*Id.* at 2:11.) Officer Albrecht directed another officer to grab the gun from the floor[12] while Officer Albrecht

---

[11] At the April 28, 2026 pretrial conference, without citing to the record, Plaintiffs' counsel stated at least one surviving Plaintiff had provided deposition testimony that Moncrief did not have or use a gun during the shooting. In their summary judgment response, Plaintiffs do not cite, mention, or rely on any such deposition testimony. It is not the Court's duty to comb through the voluminous record to find Plaintiffs' deposition testimony and search it for evidentiary support for Plaintiffs' case, especially evidence Plaintiffs did not cite in their summary judgment brief. *See* Fed. R. Civ. P. 56(c)(1)(a) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions . . . ."). Instead, the Court views the facts from the cited portions of the record in the light most favorable to Plaintiffs.

[12] Throughout their summary judgment brief, Plaintiffs cite evidence they suggest calls into question whether the gun was recovered from the floorboard and whether it was planted by a law

"[had] a cover on" Moncrief.[13] (*Id.*)

Of the three shots fired that night, Officer Albrecht fired two. (Doc. No. 202-6 at 9–10; Doc. No. 202-9 at 6; Doc. No. 202-10 at 6; Doc. No. 202-9 at 6; Doc. No. 212 Exhibits R & T.) Officer Brown drew his weapon, but did not fire.[14] (Doc. No. 202-8 at 7; Doc. No. 204 Exhibit 12.[15])

On May 19, 2021, a medical examiner conducted an autopsy and reached the following conclusions:

---

enforcement officer during or after the shooting. Plaintiffs also point to alleged defects in the record of the gun's chain of custody both before and after the gun was logged into evidence. As explained in this Memorandum Opinion and Order, the uncontradicted evidence establishes Moncrief discharged a weapon. Consequently, the identity and chain of custody of the weapon Moncrief used is not material to the resolution of Plaintiffs' claims.

[13] Neither the floorboard nor the gun is clearly visible in the video, and the officer who was directed to retrieve the gun is outside the camera's view.

[14] According to Plaintiffs, video footage shows Officer Brown fired the first shot. (Doc. No. 208 at 11–12 (citing Doc. No. 212 Exhibit R.) If it existed, such video evidence would preclude entry of summary judgment in Defendants' favor. However, the video exhibit upon which Plaintiffs rely does not show Officer Brown firing his weapon. (Doc. No. 212 Exhibit R.) At most, the video shows only a brief glimpse of what is likely the top of Officer Brown's head. (*Id*.) **Plaintiffs' counsel, Jennifer Townsend, is strongly ADMONISHED for misrepresenting the video evidence, which speaks for itself. The misrepresentation is not trivial. It is critical to the key issue of who fired which of the three shots and in what order. The Court further notes this is not Plaintiffs' counsel's only misrepresentation of evidence at the summary judgment stage. Nevertheless, the Court will not require Plaintiffs' counsel to show cause why sanctions should not be imposed for violating Rule 11 of the Federal Rules of Civil Procedure, but only because the Court is not inclined to further prolong this case.**

[15] In Officer Brown's body camera footage, his weapon is visible from the time he exits the vehicle until after the shooting. (Doc. No. 204 Exhibit 12.) At the April 28, 2026 pretrial conference, Plaintiffs' counsel conceded Officer Brown's body camera does not show him discharging his weapon. Plaintiffs' counsel contended the video shows an accidental misfire due to a defect in the manufacture of Officer Brown's gun. Yet, Officer Brown's body camera does not show a barrel flash or the gun kick back from the weapon discharging. (*Id*.) The Court notes Plaintiff's complaint does not allege Officer Brown's weapon was faulty, that Officer Brown mishandled his weapon, or that a misfire due to a product defect gives rise to liability on Defendants' part. (Doc. No. 74.)

> This 32-year[-]old male reportedly shot himself in the head, after which the bullet ricocheted, resulting in the police to fire back at the decedent. The autopsy revealed an intraoral (inside of the mouth) gunshot wound which transected (completely severed) the brainstem. This gunshot wound was immediately fatal. Also present was an indeterminate range graze wound of the left frontal scalp which caused a depressed skull fracture and bleeding into the space overlying the brain. Although this injury may have resulted in death, it may have also been survivable. However, the presence of the previously noted immediately fatal intraoral gunshot wound which completely severed the brainstem invalidates the significance of the graze wound of the left forehead as a fatal injury.
>
> Therefore, based on the Report of Death Investigation and the autopsy findings, the recommended cause of death is "Intraoral gunshot wound of the head" and the recommended manner of death is "Suicide[."]

(Doc. No. 202-10 at 6.)[16]

## V.    DISCUSSION

Officers Albrecht and Brown argue they are entitled to qualified immunity on Plaintiffs' Count I § 1983 claim. They also argue state law immunity shields them from Plaintiffs' state law claims in Counts VI and VIII. The City argues Plaintiffs failed to demonstrate a municipal policy or custom caused the alleged use of excessive force, as necessary to establish Plaintiffs' Count III *Monell* claim. All Defendants argue Plaintiffs

---

[16] Because Defendants met their burden to establish the absence of a genuine issue of fact, Rule 56 requires Plaintiffs to go beyond the pleadings and "by [their] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (citation modified). Plaintiffs offer no expert testimony that contradicts or brings into question the medical examiner's conclusions. At the pretrial conference, the Court inquired as to the identity of Professor Gregory Gilbertson, a witness Plaintiffs intended to call at trial. In response, Plaintiffs' counsel stated Professor Gilbertson would provide expert testimony regarding police procedures and the evidentiary chain of custody for the weapon allegedly recovered from Plaintiffs' vehicle. Counsel did not indicate Professor Gilbertson was qualified to provide a medical opinion as to Moncrief's cause of death. Nor did Plaintiffs cite, mention, or rely on Professor Gilbertson's opinions in their summary judgment response. *See* Fed. R. Civ. P. 56(c)(1)(a).

failed to provide evidence to establish a shot fired by an MPD officer killed Moncrief, as would be required for Plaintiffs to prevail on their Count V wrongful death claim.

Plaintiffs argue Moncrief did not commit suicide. Instead, they contend he died at the hands of Officers Albrecht and Brown, who acted with excessive force due to the City's unconstitutional policies and customs. Plaintiffs argue Officers Albrecht and Brown are not entitled to qualified or state law immunity because they acted willfully and maliciously in violation of Plaintiffs' clearly established constitutional rights.

The Court will first address whether evidence reasonably supports Plaintiffs' factual contentions that Moncrief was not armed, that he did not fire a weapon, and that he died from a bullet fired by Officer Albrecht or Officer Brown. The resolution of the parties' legal arguments depends on whether those three facts are in genuine dispute. The Court will then address the parties' legal arguments in the order most conducive to the efficient resolution of the motion for summary judgment.

A.   Uncontradicted Evidence Establishes the First Shot Fired Was Moncrief's Immediately Fatal Self-Inflicted Gunshot.

Plaintiffs contend undisputed evidence shows Moncrief did not have a gun[17] and all three shots came from outside the vehicle: two from Officer Albrecht, and one from Officer

---

[17] Without citing record evidence, Plaintiffs state Moncrief was unarmed when he entered Plaintiffs' vehicle and during the shooting. (Doc. No. 208 at 12.) In their statement of facts, Plaintiffs seem to imply someone planted a gun on the floorboard of Plaintiffs' vehicle after the shooting. (*Id.* at 12–14.) They also emphasize that, from the officers' vantage points in the brief seconds between Moncrief leaving the hotel and the shooting's conclusion, no officer saw him holding a gun. (Doc. No. 208 at 12–13.) Additionally, video evidence of Moncrief as he exited the hotel shows his hands, when they could be seen, were not holding a gun as he approached Plaintiffs' vehicle. (Doc. No. 212 Exhibits R, T & U.) Nevertheless, uncontradicted evidence establishes Moncrief fired at himself. (Doc. No. 202-10.)

Brown. Plaintiffs further contend one of the Officers' shots killed Moncrief. (Doc. No. 208 at 11–12.) Defendants contend undisputed evidence shows Officer Albrecht fired twice after Moncrief fired an immediately fatal self-inflicted shot. (Doc. No. 203 at 8.) In determining whether the parties present a genuine issue of material fact, the Court is mindful that, on summary judgment, factual disputes are to be resolved in the light most favorable to Plaintiffs as the nonmoving parties. *See Anderson*, 477 U.S. at 255. Here, however, the undisputed evidence does not support an inference in Plaintiffs' favor.

Plaintiffs acknowledge three shots were fired, which is consistent with witness testimony. (Doc. No. 208 at 12–13; *see*, *e.g.*, Doc. No. 202-4 at 8.) The parties agree—and video evidence confirms—Officer Albrecht fired twice. (Doc. No. 203 at 8; Doc. No. 208 at 12; *see also* Doc. No. 212 Exhibits R & T.) Therefore, someone else must have fired a shot. The medical examiner's uncontradicted report[18] establishes that person was Moncrief, who fired at himself. (Doc. No. 202-10 at 6.) Additionally, the uncontradicted evidence establishes Moncrief's shot was the fatal one. Specifically, the medical examiner's uncontradicted report found Moncrief died of an immediately fatal self-

---

[18] Plaintiffs represent the medical examiner "acknowledged that more information, something other than the police narrative, such as crime scene photos or videos, could have made a difference in his analysis." (Doc. No. 208 at 15 (citing Doc. No. 211-12 at 77).) That was not his testimony. (*See* Doc. No. 211-12 at 77 (which does not contain the alleged testimony); *id*. at 76–83 (for further context, demonstrating Plaintiffs' description of the medical examiner's testimony is false)). Furthermore, Plaintiffs do not offer any specific additional evidence that, if considered by the medical examiner, could have changed his conclusion in their favor. Plaintiffs emphasize Moncrief's body showed indications of lifesaving measures, such as CPR. However, Plaintiffs point to no expert testimony or other evidence that lifesaving attempts somehow undermine the medical examiner's conclusions. Plaintiffs also question the medical examiner's conclusions because no bullet fragments were recovered at the scene. Despite the lack of bullet fragments or casings, it is undisputed three shots were fired and Moncrief suffered two bullet wounds.

inflicted gunshot wound that entered his mouth and transected his brain stem. (Doc. No. 202-10 at 6.)

Further, Plaintiffs provide no evidence Moncrief fired after Officer Albrecht, whereas Officer Albrecht testified he fired after a shot came from inside Plaintiffs' vehicle.[19] (Doc. No. 202-9 at 6.) Hence, the only evidence before the Court establishes Moncrief fired first, followed by two shots from Officer Albrecht.

Therefore, the uncontradicted evidence establishes the first shot was Moncrief's own, which killed him. In so concluding, the Court has not weighed conflicting evidence or usurped the jury's function. Instead, the Court merely sets forth what the undisputed evidence shows. Plaintiffs have presented no evidence that reasonably supports a contrary conclusion. Even with all reasonable inferences drawn in Plaintiffs' favor, there is no genuine factual dispute.

B.    Officers Albrecht and Brown are Entitled to Qualified Immunity on Plaintiffs' Count I Fourth Amendment § 1983 Excessive Force Claim.

"So long as a government official acts within the scope of his discretionary authority and does not violate clearly established law, the doctrine of qualified immunity protects that official not only from civil liability, but also from suit and its concomitant burdens.'"

---

[19] Officers Albrecht and Jones testified they concluded the first shot came from inside Plaintiffs' vehicle because they saw glass shatter outwards from the vehicle's rear window before Officer Albrecht fired. (Doc. No. 202-6 at 10; Doc. No. 202-9 at 6.) Video footage of the incident shows all three shots occurred in the span of approximately one second. Played slowly, the video shows that, immediately before Officer Albrecht fires his weapon twice, there appears to be a burst of haze outwards from Plaintiffs' rear window and an individual in the vehicle's back seat slumps toward the passenger side. (Doc. No. 212 Exhibit R at 1:08; Doc. No. 212 Exhibit T at 1:00–:01.) In concluding undisputed evidence establishes Moncrief fired first, the Court need not determine whether the video shows the alleged existence and direction of shattering rear window glass or whether the video shows Moncrief fired first. (Doc. No. 208 at 12.)

*Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998) (citation modified). "[B]ecause government officials are not required to err on the side of caution, qualified immunity is appropriate in close cases where a reasonable officer could have believed that his actions were lawful." *Lee v. Ferraro*, 284 F.3d 1188, 1200 (11th Cir. 2002) (citation modified). "In other words, 'qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.'" *Johnson v. City of Palm Bay*, Fla., No. 25-10718, 2025 WL 3251263, at *3 (11th Cir. Nov. 21, 2025) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).

"The Court employs a burden-shifting analysis to the issue of qualified immunity." *Moncrief v. City of Montgomery*, No. 2:23-cv-331-JTA, 2024 WL 4142655, at *5 (M.D. Ala. Sept. 10, 2024). A defendant asserting qualified immunity first must prove he was "acting within his discretionary authority." *Piazza v. Jefferson Cnty.*, *Ala.*, 923 F.3d 947, 951 (11th Cir. 2019) (citation modified). If the defendant satisfies this initial burden, then "the burden shifts to the plaintiff to prove that '(1) the officer violated a constitutional right and (2) the right was clearly established at the time of the alleged violation." *Odom v. Boisvert*, No. 23-11226, 2024 WL 3649048, at *2 (11th Cir. Aug. 5, 2024) (quoting *Piazza*, 923 F.3d at 951).

Plaintiffs can meet the "clearly established" requirement in one of three ways: "(1) by pointing to a materially similar decision of the Supreme Court, [the Eleventh Circuit], or the supreme court of the state in which the case arose; (2) by establishing that a broader, clearly established principle should control the novel facts of the case; or (3) by [showing] the case is one of those rare ones that fits within the exception of conduct which so

14

obviously violates th[e] constitution that prior case law is unnecessary." [20] *Powell v. Snook*,

25 F.4th 912, 920 (11th Cir. 2022) (citation modified), *abrogated on other grounds by*

*Barnes v. Felix*, 605 U.S. 73 (May 15, 2025).

In determining whether an officer's conduct violates clearly established law, the

Fourth Amendment's objective reasonableness standard governs whether an officer's use

of force is excessive. *Graham v. Connor*, 490 U.S. 386, 394–95 (1989); *Johnson*, 2025 WL

3251263, at *3.

> "[The objective reasonableness] standard requires us to ask whether the officer's conduct was objectively reasonable in light of the facts confronting the officer." *Patel v. City of Madison*, 959 F.3d 1330, 1338–39 (11th Cir. 2020) (alterations adopted) (quotations omitted); *see also* [*Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010)] ("[T]he only perspective that counts is that of a reasonable officer on the scene at the time the events unfolded." (quotations omitted)). Whether the force used was reasonable is dependent on the totality of the circumstances, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. "Other considerations are the need for the application of force, the relationship between the need and the amount of force used, [and] the extent of the injury inflicted . . . ." [*Baker v. City of Madison*, 67 F.4th 1268, 1279 (11th Cir. 2023)]. Importantly, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. "The law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect." *Jean-Baptiste*, 627 F.3d at 821 (alteration adopted).

---

[20] The Eleventh Circuit recently confirmed a plaintiff may establish the "obvious clarity" of a constitutional violation by a robust consensus of persuasive decisions from other circuits. *Gilmore v. Georgia Dep't of Corr.*, 144 F.4th 1246, 1263 (11th Cir. 2025).

*Johnson*, 2025 WL 3251263, at *3.

Plaintiffs do not dispute that Officers Albrecht and Brown were acting within their discretionary authority in effectuating Moncrief's arrest.[21] Therefore, to overcome the qualified immunity defense, Plaintiffs must present evidence the Officers' conduct violated a clearly established constitutional right.

Plaintiffs argue Officers Albrecht and Brown violated clearly established law by drawing their weapons while effectuating an investigatory stop. As Officers Albrecht and Brown point out, "[o]fficers are permitted to draw weapons 'when approaching and holding individuals for an investigatory stop . . . when reasonably necessary for protecting an officer or maintaining order.'" *Jones v. Walsh*, 711 F. App'x 504, 507 (11th Cir. 2017) (quoting *Courson v. McMillian*, 939 F.2d 1479, 1494–95 (11th Cir. 1991)). Rather than respond to the Officers' argument directly, Plaintiffs cite cases holding officers exercise unreasonable force when drawing a gun on compliant bystanders and unarmed civilians who objectively pose no threat. (Doc. No. 208 at 24.) What Plaintiffs fail to do, however, is point to any evidence showing reasonable officers would have concluded they were dealing with a nonthreatening, unarmed, compliant person when facing the same exigencies as Officers Albrecht and Brown: stopping a vehicle to arrest a kidnapping and domestic violence suspect who was last reported to be armed and used a gun to threaten others and exert force on a victim. Neither have Plaintiffs offered argument, case law, or evidence to show

---

[21] Generally, an arrest is an act within a law enforcement officer's discretionary authority. *Pair v. City of Parker FL Police Dep't*, 383 F. App'x 835, 839 (11th Cir. 2010); *see also Maughon v. City of Covington*, 505 F. App'x 818, 822 (11th Cir. 2013).

16

Officers Albrecht and Brown were constitutionally required to holster their weapons while securing three unknown individuals from a vehicle that had just been involved in a shooting. [22]

Plaintiffs further argue Officer Albrecht violated clearly established constitutional law in using deadly force to "'[shoot] an unarmed man in a stationary vehicle while having no reason to believe that the man would place anyone's safety in danger.'" (Doc. No. 208 at 25 (quoting *Morton v. Kirkwood*, 707 F.3d 1276, 1282 (11th Cir. 2013)).) Citing no facts from the record, Plaintiffs contend "[t]here is enough evidence in the record to show there is a genuine issue of fact regarding Moncrief's access to a gun during this officer-involved shooting." (Doc. No. 208 at 25.) The Court is unpersuaded. The uncontradicted evidence establishes Moncrief was reported to have possessed a gun and used it in kidnapping Barber, he shot himself in the vehicle, and he discharged his gun before Officer Albrecht.

Finally, in a subheading of their response brief's outline, Plaintiffs argue "[t]he use of deadly force was unreasonable because no Plaintiff attempted to escape and neither officer gave a warning about the potential use of deadly force." (Doc. No. 26 at 32.) Beneath that subheading, they cite case law, but do not tie the cited case law to the facts of this case. As presented, Plaintiffs' argument cannot be meaningfully analyzed. It is not the Court's duty to flesh out a qualified immunity argument for Plaintiffs based on a conclusory statement in an outline heading in their brief. *Cf. Moncrief v. City of*

---

[22] Plaintiffs do not argue that, simply because three unknown individuals were in the car with a potentially armed kidnapping suspect, Officers Albrecht and Brown committed a constitutional violation by drawing their weapons.

17

*Montgomery*, No. 2:23-cv-331-JTA, 2024 WL 4142655, at \*7 n.12 (M.D. Ala. Sept. 10, 2024) ("It is not the Court's duty to flesh out all possible arguments for [the parties] when considering a motion . . . , nor would it be appropriate for the Court to attempt to do so in the adversarial system upon which the federal judiciary operates.").

Accordingly, Plaintiffs have not met their burden to overcome qualified immunity by showing a genuine factual dispute as to whether the Officers violated Plaintiffs' clearly established constitutional rights. Consequently, Officers Albrecht and Brown are entitled to summary judgment on Count I.

C.     The City is Entitled to Summary Judgment on Plaintiffs' Count III Fourth
       Amendment § 1983 Excessive Force Claim.

In Count III of their complaint, Plaintiffs allege the City failed to implement policies and train and supervise its officers to prevent the use of excessive force. (Doc. No. 74 at 26–27.) Plaintiffs bring Count III pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). "In *Monell*, the Supreme Court held . . . municipalities and other local governments may be . . . directly liable under § 1983 for constitutional violations if the injury stems from the government's enforcement of a policy[23] or custom.[24]" *Johnson v. City of Atlanta*, 107 F.4th 1292, 1295 n.3 (11th Cir. 2024). The City argues Plaintiffs cannot produce substantial evidence of a municipal policy or custom that caused

---

[23] "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Christmas v. Harris Cnty., Ga.*, 51 F.4th 1348, 1356 (11th Cir. 2022) (citation modified).

[24] "A custom is an unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law." *Christmas*, 51 F.4th at 1356 (11th Cir. 2022) (citation modified).

a constitutional injury. In response, Plaintiffs offer a two-sentence argument:

> The City of Montgomery has publicly discussed its adoption of Eight Can't Wait deescalation in light of use of force police. [sic] Because of the chaotic actions of Officers Albrecht and Officer Brown, there was no effort to deescalate their interaction with Moncrief, even with the knowledge that there were innocent bystanders potentially in harm's way.

(Doc. No. 208 at 26.)

Plaintiffs' cursory argument fails to explain how the City's policies or customs allegedly caused Officers Albrecht and Brown to act unconstitutionally. Without evidence of a causal connection, Plaintiffs cannot prevail on their *Monell* claim. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) ("[A] municipality may be held liable for the actions of a police officer only when municipal 'official policy' causes a constitutional violation." (citing *Monell*, 436 U.S. at 694–95)). Hence, the City is entitled to summary judgment on Count III of Plaintiffs' complaint.

D.    Defendants Are Entitled to Summary Judgment on Plaintiffs' Count V State Law Wrongful Death Claim.

In Count V of their complaint, Plaintiffs allege Officers Albrecht and Brown wrongfully caused Moncrief's death by shooting him. (Doc. No. 74 at 30–31.) To prevail on their wrongful death claim, Plaintiffs must prove either Officer Albrecht or Officer Brown shot and killed Moncrief. *See* Ala. Code 1975 § 6-5-410(a) (providing a decedent's personal representative may bring a wrongful death cause of action "for the wrongful act, omission, or negligence of any person, persons, or corporation, his or her or their servants or agents, whereby the death of the testator or intestate was caused"); *Hughes v. Marley*, 390 So. 3d 545, 549 (Ala. 2023) ("In a wrongful-death action predicated on theories of

19

negligence and wantonness, a plaintiff must establish that the defendant's tortious conduct proximately caused the decedent's death."); *Perkins v. City of Decatur, Ala.*, No. 5:23-cv-1685-CLM, 2024 WL 3678684, at *12 (N.D. Ala. Aug. 6, 2024) ("Causation is an essential element in a wrongful death action."). Defendants argue Plaintiffs cannot prevail on their wrongful death claim because Plaintiffs cannot establish causation. (Doc. No. 203 at 20–21.) In support of their argument, Defendants point to the medical examiner's uncontradicted findings and testimony that Moncrief died of an immediately fatal self-inflicted gunshot wound. (*Id.*)

In response, Plaintiffs provide the following one-sentence argument: "As argued *supra*, causation is in question as it relates to Gary Moncrif's [sic] death, especially considering the admission that Officer Albrecht fired his weapon in to [sic] the vehicle." (Doc. No. 208 at 26.) Despite using the term "*supra*," Plaintiffs do not indicate precisely where in their brief they made a causation argument. The Court cannot find a nonconclusory causation argument in Plaintiffs' brief. Nonetheless, Plaintiffs fail to demonstrate a genuine issue of material fact as to the cause of Moncrief's death. As explained previously, the uncontradicted evidence establishes Moncrief caused his own death. Accordingly, Defendants are entitled to summary judgment on Count V.

E.     Officers Albrecht and Brown are Entitled to Summary Judgment on Plaintiffs' State Law Claims for Negligence, Assault, and Battery (Counts VI and VIII).

With respect to Plaintiffs' negligence, assault, and battery claims, Officers Albrecht and Brown argue they are entitled to discretionary function immunity (also known as "state

agent immunity"). At the time of Moncrief's attempted arrest,[25] discretionary function immunity was codified in Alabama Code § 6-5-338(a), restated under the same principles as common-law state agent immunity in *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000), and modified in *Hollis v. City of Brighton*, 950 So. 2d 300, 309 (Ala. 2006). State agent immunity shields state agents from liability "for negligence in the exercise of judgment" while carrying out discretionary functions.[26] *Hollis*, 950 So. 2d at 305 (citation modified).

Like qualified immunity, state agent immunity requires a burden-shifting analysis. An officer seeking state agent immunity's protection "bears the burden of demonstrating . . . the plaintiff's claims arise from a [discretionary] function that would entitle the [s]tate agent to immunity." *Ex parte City of Warrior*, 369 So. 3d 116, 121 (Ala. 2022) (citation modified). Thus, for Officers Albrecht and Brown "to demonstrate . . . they are entitled to immunity from [Plaintiffs'] claims against them . . . they must establish (1) . . . they were peace officers (2) performing law-enforcement duties at the time of the [shooting] and (3)

---

[25] At the time of the attempted arrest, "[w]hether a qualified peace officer [was] due § 6–5–338(a) [discretionary function] immunity [was] . . . judged by the restatement of [s]tate[]agent immunity articulated by *Ex parte Cranman*, 792 So. 2d 392 . . . , and adopted by a majority of [the Alabama Supreme] Court in *Ex parte Butts*, 775 So. 2d 173 (Ala. 2000), and *Ex parte Rizk*, 791 So. 2d 911 (Ala. 2000)." *Hollis v. City of Brighton*, 885 So. 2d 135, 143 (Ala. 2004). Effective October 1, 2025, the statute governing discretionary function immunity, Ala. Code 1975 § 6-5-338, was repealed and replaced by Ala. Code 1975 § 6-5-338.1 through -338.4, which provides peace officers with immunity similar to federal qualified immunity. All parties approach the state agent immunity issues within the framework of § 6-5-338, *Cranman*, and *Hollis*. (Doc. No. 203 at 22–27; Doc. No. 208 at 27–30.)

[26] "Alabama law has defined 'discretionary acts' as . . . [(1)] acts as to which there is no hard and fast rule as to course of conduct that one must or must not take" and (2) acts "requiring exercise in judgment and choice and involving what is just and proper under the circumstances*." Ex parte Young*, 352 So. 3d 1160, 1168 (Ala. 2021) (citation modified).

exercising judgment and discretion." *Ex parte City of Homewood*, 231 So. 3d 1082, 1087 (Ala. 2017). If they can do so, "the burden then shifts to [Plaintiffs] to show that one of the two categories of exceptions to [s]tate[]agent immunity recognized in *Cranman* is applicable." *Warrior*, 369 So. 3d at 121 (citation modified). Those two exceptions are as follows: (1) when the Constitution or laws of the United States or of the State of Alabama "enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise," or (2) "when the [officer] acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."[27] *Cranman*, 792 So. 2d at 405. "If [Plaintiffs] do[] not satisfy this burden, then the officers are entitled to immunity." *Homewood*, 231 So. 3d at 1087.

---

[27] At one point in their brief, Plaintiffs mention state agent immunity does not apply to intentional torts. (Doc. No. 208 at 27.) As a general principle, they are correct. *See Ex parte Smith*, 393 So. 3d 36, 48 (Ala. 2023); *Hollis*, 950 So. 2d at 305; *Gary v. Crouch*, 867 So. 2d 310, 313–14 (Ala. 2003). Still, Plaintiffs do not argue their assault and battery claims should survive summary judgment because they are intentional tort claims. (Doc. No. 208 at 30.) Where a plaintiff's claim involves an officer's discretionary use of force, courts have not withheld state agent immunity merely because the plaintiff alleged an intentional tort such as assault or battery. Rather, if the defendant officer shows the use of force is itself a discretionary function, the plaintiff must overcome that showing by demonstrating the officer used force unlawfully, willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law. *See e.g.*, *Ex parte McGuire*, — So. 3d —, 2025 WL 1776553, at ** 4–5 (Ala. June 27, 2025); *Ex parte Kennedy*, 992 So. 2d 1276, 1283 (Ala. 2008); *Thurmond v. City of Huntsville*, 904 So. 2d. 314, 324, 326 (Ala. 2004). Here, the decision to use force in making an arrest is a discretionary function. *See* Ala. Code 1975 § 6-5-38(a) (providing peace officers "immunity from tort liability arising out of [the officer's] conduct in performance of any discretionary function within the line and scope of [the officer's] duties"); *Cranman*, 792 So. 2d at 405 (listing activities covered by state agent immunity, including "exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons"); *Telfare v. City of Huntsville*, 841 So. 2d 1222, 1228 (Ala. 2002) (holding that "[g]enerally, arrests and attempted arrests are classified as discretionary functions" for the purpose of establishing peace-officer immunity). The framing of Plaintiffs' claims as intentional torts does not alone defeat state agent immunity.

Plaintiffs concede Officers Albrecht and Brown were engaged in a discretionary function when executing the warrant for Moncrief's arrest.[28] (*See* Doc. No. 208 at 28.) Consequently, the burden shifts to Plaintiffs to establish an applicable *Cranman* exception. *Warrior*, 369 So. 3d at 121. Plaintiffs merely argue, without evidentiary support: "In the case at bar, the use of deadly force was unjustified. No officer on the scene places a gun in the hand of Moncrief." (Doc. No. 208 at 29.) Plaintiffs do not explain why the MPD officers' alleged inability to "place[] a gun in the hand of Moncrief"[29] proves he did not discharge a weapon.

Plaintiffs' brief is not a model of clarity. They discuss Ala. Code § 13A-11-61(a), a criminal statute prohibiting the discharge of a firearm into an occupied vehicle. (Doc. No. 208 at 29–30.) Yet, they do not articulate a connection between the criminal statute and *Cranman* immunity exceptions, at least not with sufficient clarity to allow meaningful analysis of their argument. Therefore, their discussion of § 13A-11-61(a) is inapposite.

Additionally, Plaintiffs argue: "Law enforcement officers acting within the scope of their lawful duties and using reasonable force would likely have access to justification defenses, though the specific facts and analysis argued *supra*, shows [sic] that Officer

---

[28] Plaintiffs' second amended complaint alleges Officers Albrecht and Brown acted tortiously by shooting into Plaintiffs' vehicle, using deadly force without warning, and failing to attempt an alternative to the use of lethal force. (Doc. No. 74 at 31–33.) Such actions are discretionary judgments cloaked with state agent immunity. *See* Ala. Code 1975 § 6-5-38(a); *Cranman*, 792 So. 2d at 405; *Telfare*, 841 So. 2d at 1228.

[29] Plaintiffs appear to argue no officer at the scene observed Moncrief holding a gun. On the other hand, Plaintiffs cite no officer's testimony stating Moncrief <u>was not</u> holding a gun at the time shots were fired. But, uncontroverted evidence in the form of the medical examiner's report "places a gun in the hand of Moncrief," whether or not the officers saw it during the shooting.

23

Albrecht and Officer Brown's use of force was excessive." (Doc. No. 208 at 30.) Presumably, Plaintiffs are referring back to their Fourth Amendment excessive force argument. However, Plaintiffs' excessive force argument is itself insufficient to support meaningful analysis.[30] (Doc. No. 208 at 23.) In it, Plaintiffs cite legal authority to the effect that justification for use of deadly force depends on whether the circumstances demonstrate an immediate threat of harm to officers or others. Yet, they cite no <u>evidence</u> showing that, <u>under the circumstances of this case</u>, Officers Albrecht and Brown were unjustified in using deadly force.[31] (*See id.* at 24, *see also id.* at 29–30.) (Doc. No. 208 at 24.)

Consequently, Plaintiffs have not met their burden to provide substantial evidence of an applicable exception to state agent immunity, and Officers Albrecht and Brown are entitled to summary judgment on Counts VI and VIII.

---

[30] Plaintiffs' brief expounds at length on general principles of Fourth Amendment law, immunity, and other pertinent legal issues. Their brief is nearly devoid of meaningful explanation as to how those legal principles apply to the facts as established by the record on summary judgment. With respect to qualified and state agent immunity, Plaintiffs' perfunctory arguments as to how <u>the facts of this case</u> demonstrate the shooting was unjustified are as follows: (1) "[n]o such facts [showing justification for the shooting] exist in the case at bar, as reasoned, *infra,*" and (2) "the specific facts and analysis argued *supra*, shows [sic] that Officer Albrecht and Officer Brown's use of force was excessive." (Doc. No. 208 at 24, 30.) Two conclusory statements referring solely to one another for support is the very embodiment of circular reasoning, and circular reasoning does not aid the court here.

[31] On summary judgment, "a party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Throughout the argument portion of their brief, Plaintiffs consistently fail to cite the record in support of their arguments and fail to specifically and coherently explain how their cited case law applies to the facts of this case.

## VI.    CONCLUSION

Accordingly, it is ORDERED as follows:

1.    Defendants' motion for summary judgment (Doc. No. 202) is GRANTED.

2.    Plaintiffs' remaining claims are DISMISSED with prejudice.

3.    All pending motions (Docs. No. 240, 243, 244) are DENIED as moot.

4.    This action is DISMISSED with prejudice.

A separate final judgment will issue.

DONE this 1st day of May, 2026.

_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE